(November 3, 1911.)

## BELLE KING and C. B. KING, Respondents, v. A. V. CHAMBERLIN, Appellant.

[118 Pac. 1099.]

PRIVATE AND PUBLIC WATERS—SURFACE AND DRAINAGE WATERS—PRIVATE OWNERSHIP IN WATER—RIGHT OF APPROPRIATION AND DIVERSION—RIGHT TO IMPOUND WATERS.

(Syllabus by the court.)

1. Where K. builds dams and dikes on his own land and collects surface water from the rains and melting snow and forms a lake on his own lands, which is in no way fed from any natural stream or regular flow of water, *held,* that the water so accumulated and impounded is the private property of the owner of the land and is not subject to appropriation or diversion by any other person without the consent of the land owner, and that the state engineer has no right or authority to grant a permit to any other person to appropriate or divert such private waters.

2.  The constitution, sec. 3, art. 15, confers and protects the right to "divert and appropriate the unappropriated waters of any natural stream to beneficial uses," but does not purport to deal with private waters, such as private ponds, artificial lakes or wells owned by private persons and formed by collecting and impounding surface water.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County.   Hon. Robert N. Dunn, Judge.

Submission on an agreed statement of facts as to the right of the plaintiffs to the waters of an artificial lake constructed on their own land.   Judgment for the plaintiffs and defendant appeals.   *Affirmed.*

Roger G. Wearne, for Appellant.

The waters of a lake which was formed from a slough by means of dams and dikes, and which is wholly upon private lands, may be legally appropriated and diverted for irrigation or domestic purposes, without the consent of the owner of such lands.   (Sec. 3252, Rev. Codes; *Delaplaine v. Chicago & N. W. Ry. Co.*, 42 Wis. 214, 24 Am. Rep. 386; *Deidrich v. Northwestern Union Ry. Co.*, 42 Wis. 248, 24 Am. Rep. 399; *Van Camp v. Emery*, 13 Ida. 202, 89 Pac. 752; *Denver & Ft. R. Co. v. Dotson*, 20 Colo. 304, 38 Pac. 322.)

McFarland & McFarland, for Respondents.

It was the intention of the framers of the constitution of this state to limit the right to divert and appropriate unappropriated waters.

"A watercourse is a stream of water flowing in a definite channel, having a bed, and sides or banks, and discharging itself into some other stream or body of water."   (*Hutchinson v. Watson Slough Ditch Co.*, 16 Ida. 484, 133 Am. St. 125, 101 Pac. 1059; 2 Farnham's Waters and Water Rights, 1553–1565; *Hill v. Cincinnati W. & M. Ry. Co.*, 109 Ind. 511, 10 N. E. 410; *Robinson v. Shanks*, 118 Ind. 125, 20 N. E. 713.)

A depression or drainage that merely carries away water during the rainy season is not a natural stream of water or watercourse. (2 Farnham's Water and Water Rights, 1555–1560; *Carr v. Moore,* 119 Iowa, 152, 97 Am. St. 292, 93 N. W. 52; *Applegate v. Franklin,* 109 Mo. App. 293, 84 S. W. 347.)

A lake, spring, pond, pool or slough, without a stream connected therewith, is not a watercourse or natural stream, and the waters thereof are not open to appropriation or diversion. (*Dickey v. Maddux,* 48 Wash. 411, 93 Pac. 1090.)

AILSHIE, J.—This case was submitted to the trial court on an agreed statement of facts as follows: Paragraph 1 states that the plaintiffs are husband and wife; paragraph 2 describes the lands belonging to the plaintiffs, comprising 160 acres situated in Kootenai county, Idaho; paragraphs 3, 4, 5, 6, 7, 8, and 9 are as follows:

"3. That at all of the times herein mentioned there was and yet is wholly situated and located on said lands and premises a certain lake, known as, named and called Avondale Lake, about three-quarters of a mile long, and from 200 to 400 yards wide, and that said lake is at all times wholly and entirely situated upon and confined to and within the said above-described lands and premises;

"4. That about twenty-five years ago said lake consisted of a shallow slough that covered not to exceed 15 acres, and that in the spring the said lake had an outlet to Hayden Lake, which is about one-quarter of a mile distant, but that during the summer and fall months said outlet and lake both became dry, and only a small quantity of stagnant green water remained in the lake till the fall and spring rains and the melting snow would from time to time replenish the waters thereof;

"5. That about eighteen years ago plaintiffs commenced to build dams and dikes at the lower end of said Avondale Lake, and wholly and entirely upon the lands of plaintiff Belle King, and that by means of said dams and dikes, built and improved by plaintiffs, as aforesaid, from year to year, said Avondale Lake has developed from a slough of not to

exceed fifteen acres to a lake three-quarters of a mile long by from 200 to 400 yards wide; that without the work of damming and diking by plaintiffs, as aforesaid, said lake would not retain or hold any water whatever during the summer and early fall seasons, but would go dry;

"6. That said Avondale Lake is not and never has been fed or supplied with water by any stream, natural or otherwise, and contains no springs, but that it is supplied with water from the spring and fall rains, and from the snows that melt in the spring and flow over the lands of plaintiff into said Avondale Lake;

"7. That at all of the times herein mentioned plaintiff Belle King owned and still owns all of the lands, shores and shore lines immediately surrounding, adjoining and adjacent to said Avondale Lake and every part thereof, and that said Avondale Lake is and for more than fifteen years immediately preceding the date hereof has been in the inclosure of plaintiff, and within lands that are and at all of said times have been inclosed by a fence;

"8. That during the extreme high water of said lake, the depth thereof at the deepest point does not exceed twenty-five feet, and that during the summer or dry season said lake annually falls at least ten feet;

"9. That said Avondale Lake is not and has never been used for logging or other navigable purposes, and that no boats of any description, except the private pleasure boats of plaintiffs, have ever been operated or navigated upon said lake."

Paragraph 10 is to the effect that on the 9th day of May, 1911, the defendant, A. V. Chamberlin made application to the state engineer for a permit to appropriate the waters of Avondale Lake for irrigation purposes to irrigate a certain tract of land owned by the defendant and therein described, and that he thereafter received such permit from the state engineer.

Paragraphs 11 and 12 are as follows:

"11. That said defendant intends to and gives out and threatens that he will divert the waters of said Avondale

Lake as aforesaid, for the purposes aforesaid, unless prevented or restrained therefrom by an injunctional order of this court, and that if defendant is permitted to so divert the waters of said lake, it will result in greatly and materially decreasing the waters thereof, if not in totally exhausting the same;

"12. That defendant's said application for said permit was made, and said permit granted to defendant by the state engineer, as aforesaid, without the consent of plaintiffs and against their will, and that plaintiffs object to defendant being permitted to appropriate or divert the waters of said Avondale Lake for the purposes aforesaid, or for any other purposes."

The foregoing comprises all the facts to be considered in determining this case. Based upon the foregoing statement of facts, the parties submitted the following questions to the court for answer and decision:

"1. Are the waters of Avondale Lake public waters, and are they open and subject to appropriation and diversion for irrigation purposes under the laws of the state of Idaho?

"2. Avondale Lake being entirely and wholly upon the lands and premises of plaintiff Belle King, and not being fed, supplied or maintained by any streams, natural or otherwise, and not containing any natural springs, but being originally a slough that has since been dammed and diked and kept dammed and diked, and which is fed, and supplied and maintained with water by the spring and fall rains and the melting snows, is it not private waters?

"3. Has the state engineer, under the laws of the state of Idaho, the power or authority to grant a permit to the defendant for the appropriation and diversion of the waters of Avondale Lake for irrigation purposes, against the will and consent of plaintiffs?

"4. Has defendant the legal right, under and by virtue of his said permit, which is hereby agreed to be sufficient in form, to appropriate and divert the waters of Avondale Lake for irrigation purposes as aforesaid, against the will and consent of plaintiffs?

"5. Is plaintiff Belle King the exclusive owner of Avondale Lake and the waters thereof?

"6. Is plaintiff Belle King entitled to an injunction restraining the defendant A. V. Chamberlin from diverting the waters of said Avondale Lake?"

The trial court answered these questions in favor of the plaintiffs and rendered and entered his judgment accordingly. The defendant has appealed from the judgment.

The decisive question to be answered by this court is this: May water that has been impounded by a land owner, wholly upon his own land, by means of dams and dikes and collected from the melting snows and surface water, be appropriated or diverted by any other person for irrigation or other use, under permit from the state engineer or otherwise, without the consent and against the will of the owner of the land on which such waters are impounded? This question must undoubtedly be answered in the negative.

In the first place, a land owner may use the surface of his land for any lawful purpose without let or hinderance from anyone. There is nothing unlawful in collecting and impounding surface and waste water; if he sees fit to turn his farm into a lake, he may lawfully do so, so long as he does not injure someone else in the process. Here the question of cutting off the flow of a natural stream or in any manner obstructing a watercourse or stream of water is in no manner involved. The waters collected by respondents were wholly surface and flood waters. They built their dams and dikes so as to collect the water in the winter and springtime, and thus hold it on their lands throughout the season. This it is as lawful for them to do as it would have been to sink a well on their premises and collect therein either surface water· or the waters percolating through the ground. The fact that the water is collected on the surface of the ground does not change or alter the principle involved, or lessen the right of the respondents to the use and enjoyment of the same. The constitutional right to divert and appropriate water does not extend to private water, such as Avondale Lake.

Sec. 3, art. 15 of the constitution is dealing with the water of a natural stream and provides, among other things, as follows: "The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses shall never be denied," etc. Sec. 3253 of the Rev. Codes, which provides for making applications to the state engineer for permits to appropriate water, has reference to "public waters" and "the waters of any natural stream, spring or seepage waters, or lakes, or other public waters." Neither the statute nor the constitution ever contemplated authorizing one man to appropriate and divert the property of another. Both the constitution and statute were dealing with the *public, unappropriated* waters of the state as distinguished from private property. The entire legislation of this state, as well as the repeated decisions of this court, has been along the line of encouraging economy in the use of water and collecting and impounding the same. If a man collect and impound surface and flood waters from his own land before they reach any natural stream or channel and hold the same on his own land and premises, the fact that he may not use it for irrigation or any other commercial purpose does not render it any less his property or authorize anyone else to invade his property or appropriate and divert the same. A permit from the state engineer cannot give any sanction to such a procedure. The state engineer has no right to grant permits to one man to use another man's property. (*Nielson v. Parker,* 19 Ida. 727, 115 Pac. 727; *Youngs v. Regan, ante,* p. 275, 118 Pac. 499.)

Questions closely related to the one under consideration have been treated by Wiel in secs. 347, 348, and 349, of the third edition of his work on "Water Rights." He there collects and considers the cases which have dealt with flood, storm, surface and drainage waters. It may there be gathered from the discussion of the author and the authorities cited that a land owner has a proprietary right in the storm or flood and surface waters, so long as diffused over his lands, and the conclusion seems to be drawn from this proposition that he may collect and impound such waters on his own lands and

still retain his sole proprietary interest therein. In sec. 349 the author makes the following quotation from Baron Alderson's opinion in *Broadbent v. Ramsbotham* (11 Ex. 602) : "No doubt, all the water falling from heaven, and shed upon the surface of a hill, at the foot of which a brook runs, must, by the natural force of gravity, find its way to the bottom, and so into the brook; but this does not prevent the owner of the land on which this water falls from dealing with it as he may please, and appropriating it. He cannot, it is true, do so if the water has arrived at and is flowing in some natural channel already formed. But he has a perfect right to appropriate it before it arrives at such channel." After reviewing the cases, Mr. Wiel says:

"All the many cases already cited considering whether there was or was not a watercourse held that if there was not a watercourse, but only diffused surface water, neither the law of riparian rights nor the law of permanent rights by priority of appropriation applies. This is because, as set forth in the first part of this book, streams are natural resources of permanent continuance due to nature, while surface water is not a permanent thing nor definite in character."

In *Metcalf v. Nelson,* 8 S. D. 87, 59 Am. St. 746, 65 N. W. 911, the court had under consideration the right of a land owner to recover damages from one who entered upon his premises and diverted and carried away a large quantity of water from a spring located on the plaintiff's land. The court, in passing upon that question, said:

"As the hidden water in the plaintiff's soil belonged to him as a part of it, he might, by artificial means, separate it from the soil, and it would still belong to him. He might sink a well, into which such water would work its way, and the accumulation in the well would still be his, and subject to his proprietary control. (*Davis v. Spaulding,* 157 Mass. 431, 32 N. E. 650, 19 L. R. A. 1021.) If the water which fills this spring is not subject to the law of running streams, but to that of percolating water, did the plaintiff lose his ownership of it when it appeared upon the surface? If a cloud had burst on plaintiff's land, and filled a cavity thereon with

rain, it would, while so confined, belong to plaintiff, and we are unable to see why or how the question of ownership can be made to depend upon which way the water comes from. Suppose this percolating water appeared at the surface only at the point of the spring, and at once sunk away again into the surrounding soil, resuming its character of wandering, seeping water, would the plaintiff's proprietary rights come and go with the appearance and disappearance of the water? It must be remembered that we are not dealing with a running stream, or with riparian rights, but simply with percolating waters which have combined and struggled to the surface on plaintiff's land. We think the plaintiff had more than the ordinary usufruct in the water of this spring, so long, at least, as it was held in the spring. He might consume or dispose of it all if he chose. He might convey it away in pipes, or carry it off in tanks. If medicinal, he might bottle it, and sell it for the healing of the nations. It would be inconsistent with the maintenance of such right in plaintiff to allow that the defendant or any other stranger had also the right, in hostility to the plaintiff, to take and carry away water from the same spring.''

*Metcalf v. Nelson* was cited with approval and followed by the supreme court of New Mexico in *Vanderwort v. Hughes,* 15 N. M. 439, 110 Pac. 567. In the New Mexico case, the question arose as to the right of a land owner to use and dispose of surface and seepage water gathered on his land without procuring a permit from the state engineer. The court there held that the water, while surface and seepage water, was the sole property of the land owner to deal with as he chose without procuring any permit from the state engineer, and that he might consume it all or grant its use to another and that the lower owner had no cause of action on that account. In speaking of the right of the state engineer to grant a permit for the appropriation or use of such water, the court said:

''It would be doing violence to the act of 1907 to hold that the territorial engineer was empowered by it to authorize another applicant to go upon lands held in private owner-

ship, construct ditches and appropriate seepage water or waters from snows, rain or springs, not traceable to or forming a stream or watercourse, or from constructed works, as the limitations contained in sections 1 and 53, defining the waters over which the engineer has been given jurisdiction, plainly indicate.''

From what has been said, it follows that the judgment in this case should be affirmed, and it is so ordered. Costs awarded in favor of respondent.

Stewart, C. J., and Sullivan, J., concur.