(No. 6426. April 24, 1937.)

FRANK HALL, Respondent, v. RAY TAYLOR and IVA TAYLOR, Husband and Wife, Appellants.

[67 Pac. (2d) 901.]

A. F. James for Appellants.

Charles Stout for Respondent.

AILSHIE, J.—This action was commenced by respondent to quiet his title to the waters of a small spring or seep situated on appellants' land, and he alleged title to such waters by adverse possession and use. The court made findings and entered judgment in favor of the plaintiff (respondent here) and the defendants appealed.

The assignments of error involve the sufficiency of evidence to sustain the findings, and particularly to establish title to the waters of the spring in question, either by adverse possession or by diversion and appropriation. The essential part of the court's decree reads as follows:

"It is now, therefore, hereby ordered, adjudged, and decreed that the plaintiff have judgment as prayed for in his complaint herein against the defendants, and each and all of them. That all adverse claims of the defendants, and each of them and all persons claiming or to claim said water right and right of way, or any part thereof, through, or under said defendants, or either of them, are hereby adjudged, and decreed to be invalid, and groundless and that the plaintiff be, and he. is hereby declared and adjudged to be the true and lawful owner of said water right, and right of way as described in the complaint and hereinafter described, and every part and parcel thereof, and that his title thereto is adjudged to be quieted against all claims, demands, or pretentions of the defendants, or either of them, who are hereby perpetually estopped from setting up any claims thereto or any part thereof, or interfering with in any way the right of the plaintiff to the use of said waters, and the right to enter into and upon the hereinafter described land to maintain the said dam and ditches. Said premises are bounded and described as follows, to wit: The right to the use of said waters in the amount of twenty-five inches with a priority of 1914 of an unnamed spring and stream situated on lands

described as the Southeast quarter of the Northeast quarter (SE¼NE¼) of Section Thirty Three (33), Township Five (5) South, Range Eleven (11) East, the point of diversion being approximately 15 ft. north and 24 rods west of the southeast corner of said land, together with a right of way to enter said land, repair the ditches thereon, for the purpose of conveying the said water, maintaining a dam or dams sufficient to divert said waters onto the Northeast quarter of the Southeast quarter (NE¼SE¼), and the Southeast quarter of the Southeast quarter (SE¼SE¼), of Section Thirty Three (33), Township Five, (5) South, Range Eleven (11) East, B. M. Said dam and ditches to be maintained by the plaintiff in the same general situation they are now in.''

The findings of fact support the decree. Our consideration of the case is therefore reduced to the issue as to whether or not the evidence is sufficient to support the finding and decree based thereon, as above set out.

We have examined the record of the testimony very carefully, and, while it is very meager and indefinite in some respects, we are not prepared to say that it is not sufficient to support the finding that the plaintiff's and his predecessor's ''use of said waters . . . . has been continuous, uninterrupted, adverse and notorious and uninterfered with during all the times since appropriation, to-wit, since the year 1914, and has continued to be so used to this date (date of trial) except during the months of April, May, June and a portion of July of the year 1935. . . . . ''

The evidence is sharply conflicting, that on behalf of plaintiff being of positive character and that on behalf of defendants, negative in character. In considering this evidence, the trial court had the advantage of a thorough inspection of the premises, which we do not have. We fail, however, to find any evidence to justify the court in decreeing to plaintiff a 25-inch flow of water from the spring in question. The evidence is vague and largely guesswork as to the volume of water which plaintiff and his predecessors had diverted from this spring or seep to the tract of land owned by plaintiff but, so far as we can discover from the record, it ranged from 1½ to 7 inches. The importance of the decree, definitely fixing the amount of water to be diverted, lies in

these circumstances: This spring or seep was originally developed about 1914 by the owners of these adjoininig forties, digging into the hill brakes, or what is called by one witness, a seepage strata, and developing a small flow of water.

It seems that the spring was first developed on the land now belonging to appellants (to which we will hereafter refer as the Crockett land, because it was originally located by Crockett); and immediately thereafter the owner of the adjoining forty (to which we will refer as the Hornbeck land, because originally owned by Hornbeck) dug a deeper hole or trench on his side of the division fence and drew the water off from the opposite side; and this was repeated back and forth a couple of times, with the result that the one who had the deeper ditch or hole obtained the water. Finally, some time between 1914 and 1916, the Crocketts quit making any effort to use the waters from this spring, except as seepage and percolating waters were accumulated in a pond they constructed below the spring. It also appears that the flow of seepage water increases with the amount of irrigation that takes place on the bench above, so that the seepage flow is not constant, dependent chiefly on the state and amount of irrigation on the bench above. However, the use thereof is valuable in proportion to the volume at any given time. It also appears that Crockett, appellants' predecessor, in 1914 constructed a small reservoir or pond just below this spring for collecting waste and seepage water for the watering of livestock, and that such reservoir or pond has been maintained from time to time in some state of repair and service by the occupants of appellants' tract of land. Under the evidence as it appears here, the respondent would not be entitled to an easement in this pond or reservoir. It is clear that he should not be allowed to pipe the water from appellants' pond or reservoir constructed by the Crocketts back in 1914.

It is urged by appellants that the water claimed by respondent was merely seepage or percolating water that came to the surface on appellants' land, near the division line between the two places, and did not flow off of the premises, nor did it form any watercourse and was, therefore, the private property of the owner of the land, under the rule announced by this court in *King v. Chamberlin*, 20 Ida. 504, 118 Pac.

1099, *Public Utilities Com. v. Natatorium Co.*, 36 Ida. 287, 211 Pac. 533, and *Washington County Irr. Dist. v. Talboy*, 55 Ida. 382, 389, 43 Pac. (2d) 943. We think that contention may well be conceded.

It is next contended that a lawful location or appropriation of such waters could not originate in trespass. That proposition, too, may be conceded. (Sec. 41–101, I. C. A.; *Marshall v. Niagara Springs Orchard Co.*, 22 Ida. 144, 125 Pac. 208; *Bassett v. Swenson*, 51 Ida. 256, 5 Pac. (2d) 722.) Nevertheless, we may eliminate from this case all contention that the water was lawfully appropriated and diverted as public waters and may well ignore the license and certificate of water right which was issued by the commissioner of reclamation to respondent's predecessor in interest, Hornbeck, in so far as it may apply to the spring here in question. This we do, because the court finds that the right here quieted in respondent was acquired by *adverse possession and use.* An adverse right is not originated by consent but rather against the will and without the consent of the true owner, and generally rests on an original trespass, which matures into a property right by reason of the true owner allowing the claimant or trespasser to continue the adverse use and possession uninterruptedly and with assertion of right until the statutory period has run, which bars the true owner from either asserting or defending his right to the property. (Sec. 5–210, I. C. A.)

The judgment quieting respondent's title to the water right from this spring or seep will be affirmed, but the case will be remanded for the purpose of the trial court determining the *definite amount of flow from this spring or seep,* that the respondent has used from year to year and to which he has acquired and matured a prescriptive right. This must be done in the interest of preventing controversies and conflict between these adjoining property owners. The decree is also too indefinite and uncertain as to the extent and character of *easement* awarded to the respondent for the purpose of maintaining and protecting such water right as he has acquired. The extent of the right of way or easement necessary for respondent to protect and enjoy the water right he has acquired, should be definitely and certainly fixed and de-

scribed in the decree (as to location, length and width) in order that conflicts between the land owners may be avoided. Respondent should be allowed only such easement as may be necessary for maintaining his water pipe or ditch for carrying the water onto his land; and he should not be allowed any greater dam privileges than he has exercised during the years he was acquiring this water right. (*Gorrie v. Weiser Irr. Dist.*, 28 Ida. 248, 153 Pac. 561.) Respondent's water right should not, and cannot be, measured by the extent of the flow of this spring or seep at the present time, but must be measured by the nature and extent of the use of water from this source which respondent and his predecessors have made of it during the years in which they were acquiring this prescriptive right. If it be true that the flow of the spring has gradually increased from year to year, the respondent would not be entitled to profit from any increase which has accrued since the inception of his adverse right.

''The right gained by prescription is always confined to the right as exercised for the full period of time required by the statute, which is, in this state, five years. A party claiming a prescriptive right for five years, who, within that time, enlarges the use, cannot, at the end of that time, claim the use as enlarged within that period.'' (*Boynton v. Longley*, 19 Nev. 69, 6 Pac. 437, 441, 3 Am. St. 781.)

The judgment is affirmed in so far as it adjudges respondent's title by adverse possession and use and is reversed in respect to the volume or amount of water so acquired and as to the nature and extent of the easement acquired. The cause is remanded with directions to the trial court to find and decree the exact amount or volume of water to which respondent is entitled, under the holdings herein; and also, that the court find and decree, with certainty, the *character, location, width and length* of easement acquired by respondent and necessary for his use. Costs awarded to appellants.

Givens, J., concurs.

Morgan, C. J., and Holden and Budge, JJ., concur in the conclusion reached.