(No. 6634. May 29, 1939.)

VAL JONES and ROSA JONES, Husband and Wife, Appellants, v. ALVA McINTIRE, Respondent.

[91 Pac. (2d) 373.]

H. A. Baker, for Appellants.

S. T. Lowe, for Respondent.

BUDGE, J.—Respondent, Alva McIntire, is the owner of the E½ SW¼, section 28, T. 16, S Range 42, E. B. M. Appellants are the owners of the E½ NW¼, section 28, T. 16, S. Range 42, E. B. M., immediately north of and adjoining the land of respondent. The land of respondent was entered by one Thompson, her predecessor, and patent issued therefor in 1880. The land of appellants was not entered until 1885. Two springs rise entirely on the land of re-

spondent in a small basin, the springs being located approximately 32 and 76 feet south of the north boundary line of appellants' land. These springs spread over the bottom of the basin, which has a tendency to retain the waters on the lands of respondent, and eight or ten acres of respondent's land is dampened and wet therefrom in ordinary years. The general slope of the lands is to the north and northwest and there is testimony that in 1885 and thereafter waters from the springs flowed to the north in two natural channels joined upon the lands now owned by appellants. In the year 1934, without the knowledge or consent of respondent, appellants entered upon respondent's land, dug out the springs, and cut ditches from the head of the springs conveying the waters of the springs upon appellants' land. Respondent upon discovery of what had been done by appellants partially filled up the ditches so dug, cutting off, at least partially, the flow of water and posted notices forbidding trespass upon her land. Appellants then instituted this action seeking to establish a right to the use of all the water of the springs, with the exception of the right of respondent to water stock therefrom, alleging an appropriation and diversion instituted in 1885 by entry upon the lands of respondent with the consent of the then owner and actual application of the water to the lands of appellants and for domestic purposes, alleging a continuous and uninterrupted beneficial use of the water for irrigation and domestic purposes from 1885 until 1934 when the water supply was interfered with. Appellants prayed a decree and judgment quieting their title to the use of all the water of the two springs, except for the watering of respondent's live stock, and also sought an injunction to restrain respondents from interfering with appellants' claimed right to enter upon respondent's land and clean out the springs and watercourses. Respondent denied the appropriation of water of the springs by appellants and alleged by cross-complaint that she was the owner of all of the water of the springs for domestic, stock and irrigation purposes while the same remained upon her land, praying that appellants take nothing by their complaint and that the same be dismissed and for such other and further relief as to the court might seem

meet and proper, and that appellants be enjoined and restrained from entering into and upon her lands or from cutting or digging any ditch, ditches, or trenches thereon, or from digging in or interfering with the springs.

The cause was tried to the court and judgment entered in favor of respondent Alva McIntire dismissing appellants' complaint and adjudging and decreeing that respondent Alva McIntire was the owner of the real estate described in her cross-complaint, together with all the water rising upon said premises, including the water rising from the two springs so long as the same remained upon her land; that she was entitled to have said water flow or spread over her land and use the same for stock or domestic purposes, or any other purpose; and enjoining appellants from digging or constructing ditches for the purpose of diverting, draining, or carrying away the waters rising in said springs.

From the decree entered this appeal is prosecuted.

Appellants' three assignments of error urge that conclusions of law Nos. 1 and 2 and the decree are contrary to and not sustained or supported by the evidence in that: 1, the evidence fails to establish and the court failed to find that respondent Alva McIntire or her predecessor had appropriated, diverted or applied to beneficial use any of the waters of the springs. 2, that the evidence establishes conclusively that the predecessor of appellants in 1885 appropriated and diverted all of the water of the springs and appellants and their predecessors have continuously made beneficial use of the same; and that the conclusions of law numbered one and two and the degree are against the law in that (a) they ignore the priority of right which appropriation gives to appellants; (b) they give the owner of land over which flows waters subject to appropriation the right, by reason alone of ownership of land and without appropriation, to interfere with and entirely control the water while on his premises and in disregard and defiance of the right of prior appropriators; and (c) the doctrine of riparian ownership has been repudiated by the Constitution and statutes of this State.

Before proceeding with a discussion of appellants' assignments of error it appears proper to consider that portion of

the conclusions and decree which appellants concede are correct. Paragraph IV of the complaint alleges:

"That sometime during the spring of 1885, plaintiff Val Jones' father and predecessor in interest, with the consent of its then owner, one, H. H. Thompson, entered upon said $E\frac{1}{2}SW\frac{1}{4}$ aforesaid (respondent's land) and actually appropriated and by means of ditches diverted to the above described lands of plaintiffs, for irrigation and stock purposes all of the waters of said springs, . . . . "

The court found, and this finding is concededly proper, that no appropriation and diversion was made by means of entry upon respondent's land, either with consent or otherwise, but there is evidence of an appropriation and diversion of water made at a point on appellants' land, and the court made a finding to this effect. No objection was made to the introduction of such proof, respondent has not appealed and has made no objection to the court's finding, and the variance, if such it may be said to be, does not appear to be material or prejudicial. (Secs. 5–901, 5–902, I. C. A.; *Douville v. Pacific Coast Casualty Co.*, 25 Ida. 396, 138 Pac. 506, Ann. Cas. 1917A, 112; *Joyce v. Rubin,* 23 Ida. 296, 130 Pac. 793; *The Mode Ltd. v. Myers,* 30 Ida. 159, 164 Pac. 91.) Eliminating that portion of the complaint alleging that entry was made upon the lands of respondent the complaint still alleges that in 1885 appellants actually appropriated and by means of ditches diverted to their lands for irrigation and stock purposes all of the water of said springs.

That portion of the findings with reference to no entry having been made on respondent's land with consent or otherwise recites:

"That during the spring of 1885, the father and predecessor in interest of the plaintiff, Val Jones, did not, with the consent of H. H. Thompson, the then owner of the land of the defendant and cross complainant, Alva McIntire, or otherwise or at all, enter upon the said lands and actually or otherwise appropriate and by means of ditches divert to and upon the lands of the plaintiff for irrigation and stock purposes, all or any of the waters of the springs rising upon the lands of the defendant. . . . . "

Paragraph 4 of the judgment perpetually enjoins appellants from entering upon the lands of respondent, or from cleaning out the springs or digging or constructing ditches, trenches or drains therefrom, through, over or upon the land of respondent, or:

"from diverting, draining or carrying the waters rising in said springs, therefrom or in any other manner molesting or interfering with the said springs or the water rising or flowing therefrom, or to the use of said waters, or any part thereof, while the same remains upon the premises of the said defendant and cross complainant, and until the said water has flowed from the lands of said defendant and cross complainant to and upon the lands of the plaintiff and cross defendants."

Appellants concede the correctness of the foregoing finding and portion of the judgment to the following extent, as recited in their brief:

"On the issue of the right of appellants to enter upon the premises of respondent for the purpose of cleaning out the springs and the ditches leading to them, the evidence was conflicting. . . . . We accept the rule and make no contention of error of fact or law in the decision of the trial court that appellants are without right to enter upon the land of the respondent for the purpose of increasing the flow by cleaning out the springs or ditches."

Appellants likewise concede the correctness of the proposition that a water right cannot be initiated in trespass upon private lands. (*Marshall v. Niagara Springs Orchard Co.*, 22 Ida. 144, 125 Pac. 208; *Tobey v. Bridgewood*, 22 Ida. 566, 127 Pac. 178; *Bassett v. Swenson*, 51 Ida. 256, 5 Pac. (2d) 722; Wiel on Water Rights, 3d ed., sec. 221.)

An examination of the record discloses that when settled principles of law prevailing in this jurisdiction are applied to the findings of fact made by the court it appears that the conclusions of law numbered 1 and 2, and the judgment, with the exception of that portion thereof herein referred to as being correct, are not sustained by the law or the facts found.

The findings of fact of the court are to the effect that appellants and respondent Alva McIntire own adjoining pieces

of land, that appellants' land lies north of respondent's land and that the general slope of the lands is to the north and northwest; that upon respondent's land two springs arise in the locality heretofore related and that all water that rises in the said springs rises on the lands of respondent; that the waters that arise from said springs spread over the bottom of the spring basin forming a swamp valuable for watering live-. stock and which *has a tendency* to retain the waters of the springs on the lands of respondent; that approximately eight or ten acres of respondent's land is dampened and wet by the water of the springs, on which land natural grasses grow in ordinary years without the application of water on the surface and requiring less water than would be required in other years. The record contains ample evidence to support the foregoing findings and there is no contention by either of the parties that the same are contrary to the evidence.

The findings of fact then recite the following with relation to the water rising from the springs:

"That all of the water that rises from the two springs, that is not consumed upon the lands of said defendant and cross complainant, by irrigation, watering of livestock, evaporation, plant absorption and transpiration, *flows across that boundary line between the land of the plaintiff and defendant to and upon the lands of the plaintiffs.* (appellants) *That the combined flow of the two springs after the same reaches the land of the plaintiff is approximately seven fiftieths of one second foot.* That the flow of said springs has never been sufficient to flow across the land of the plaintiffs."
and:

"*That during the farming season of 1885, the plaintiffs* (appellants) predecessor in interest *appropriated and applied to beneficial use that portion of the water of said springs that flowed from the lands of the defendant and cross-complainant, Alva McIntire to and upon the lands of the plaintiff; that the said appropriation* made by the predecessor in interest of the plaintiffs *was not made upon the land of the defendant* and cross complainant, Alva McIntire, *but was of the water that had reached the lands of the plaintiff after the same had flowed from the lands of said defendant* and cross complain-

ant. *The only water from said springs that has been continuously and uninterruptedly used by the plaintiffs and cross defendants,* without question or protest by the defendant and cross complainant, Alva McIntire, and her predecessors in interest, *is the water that has escaped and flowed from her land to and upon the land of the plaintiffs under* NATURAL CONDITIONS.'' (Emphasis inserted.)

There is substantial competent evidence to support the foregoing findings. Several witnesses testified to the effect that in the beginning, 1885, the water of the two springs flowed in two natural channels from the springs, these channels joining on the land of appellants and that in 1885 a ditch was constructed on appellants' land diverting the water from the natural channel on appellants' land, carrying the water some little distance and thereafter until 1934 continuously and uninterruptedly using the same for irrigation and domestic purposes on appellants' land. The following excerpts of testimony refer particularly to the fact that water of the springs flowed therefrom in natural channels to and upon the lands of appellants prior to, at the time of and after the appropriation and diversion by appellants:

Val Jones, direct examination:

''Q. In what direction does the water from these springs naturally flow?

''A. North.

''Q. Toward and onto your land?

''A. Yes, sir. . . . .

''Q. The water from these springs you have, I think, testified, flows in a northerly direction from the McIntire land onto your land—is there any time of the year when the water, any water, from these springs flows off your land?

''A. No, sir. . . . .

''Q. When you first became acquainted with those springs (ever since big enough to remember) describe if you will, please, the character and course of the water courses. . . . .

''Q. Did the water from these springs reach the fence between your property and the property now owned by Mrs. McIntire?

''A. Always.

''Q. In what character of ditch or conduit?

"A. Just in a small natural ditch until the cattle tromped it in.

"Q. Was there a well defined channel from each spring?

"A. Yes, sir.

"Q. Did those channels meet at any point?

"A. After they came into my field; not before.

"Q. And then they met?

"A. Yes, sir.

"Q. And formed one water course?

"A. Yes, sir. . . . .

"Q. Where did the water from the east spring commingle with the water from the West spring, originally? . . . .

"A. Just after it came through the fence onto my land.

"Q. Originally?

"A. Yes, sir.

"Q. The water of the two springs never came together on the McIntire land, is that correct?

"A. Yes, sir."

Val Jones, cross-examination:

"Q. Did you ever see the water of the east spring commingle with the water of the west spring on the McIntire land?

"A. No, sir. . . . .

"Q. You are sure that was not the condition in 1898?

"A. Yes, sir.

"Q. And it wasn't the condition up through 1901, while you remained there?

"A. No, sir.

"Q. And wasn't the condition in 1914 when you returned?

"A. No, sir.

"Q. And never has been since?

"A. Never has been since. I'm positive. . . . .

"Q. Now it is true, is it not Mr. Jones, that before you began your digging operation in 1934, the water that rose on the McIntire land crossed the line to the north and was flowing onto your land?

"A. Yes, sir. . . . .

"Q. And it is also true that it continued to cross the line to the north and to flow onto your land after the ditches which you dug in 1934 were filled up?

"A. Yes, sir.

"Q. And has been crossing the line and flowing onto your land at all times since then?

"A. Yes, sir. . . . .

"Q. There was originally, before there was any cultivation done in that vicinity, a natural runway across the line onto your land, wasn't there?

"A. Yes, sir.

"Q. How far does the water still remain in that runway after it crosses the line onto your land?

"A. Between 3 and 400 feet.

"Q. Then your ditch heads off about 3 or 400 feet below, or to the north of the line?

"A. Yes, sir. . . . .

"Q. Well, from the springs, the water in the old natural swale from the springs flowed north and west, didn't it? . . . .

"A. When the first ditch was taken out of the old channel the natural flow of the stream after it went 300 yards it went, sloped mostly north. . . . . "

Val Jones, redirect examination:

"Q. Mr. Jones, on what side of the old channel did you dig out your ditch—on the west or on the east?

"A. On the east, the first ditch that was taken out.

"Q. Was that taken out by you or your father?

"A. By my father."

T. B. Jones, who looked at the land in 1885 prior to entry and who entered it in 1885, testified:

"Q. What, if anything, Mr. Jones, did you do with respect to the water from these springs?

"A. I built a ditch to the house.

"Q. From what point did you build the ditch?

"A. About 300 yards, maybe, below where the spring rises.

"Q. On which side of the natural course of the stream did that ditch take out?

"A. On the east side.

"Q. When did you take out that ditch?

"A. The spring of '85, don't remember, along in May, probably. . . . .

"Q. When you first saw those springs and took out the ditch, did the water that come out of the ground spread out, or did it flow from the springs in ditches?

"A. Well, it was just in a narrow course, just natural springs; it wasn't tromped in like it is now.

"Q. Was there one water course from each spring?

"A. Yes, sir.

"Q. Did they later join?

"A. They joined after they got into the field.

"Q. After they got into your field?

"A. Yes."

George Jones, brother of T. B. Jones, entered adjoining land in 1885, saw the springs in their original condition, and testified in part:

"Q. When you first learned of the springs, when the water from the springs came out of the ground did it spread out over an area or run off in well defined courses?

"A. It was in well defined courses.

"Q. One course from each spring?

"A. Yes, natural courses.

"Q. Did these water courses join?

"A. Not until they got inside or onto my brother's place.

"Q. They did after they got onto your brother's place?

"A. Yes, they would before they got to where he took the ditch out."

Cross-examination of George Jones:

"Q. Now the ditch that your brother took out, where did that head? . . . .

"A. Out of the natural course of the spring.

"Q. How far to the north line?

"A. I would say about 300 feet. . . . .

"Q. There was never a time you were there, whether it was cleaned out or not, that this water didn't run across the line to your place, was there? . . . .

"A. No, there was never a time I was there it didn't run across the line. . . . .

"Q. Now those springs you say were running in a channel when you were there?

"A. Yes, sir.

"Q. What sort of channel?

"A. Natural channel. . . . .

"Q. And the water as it rose from the ground spread out, didn't it?

"A. No, it didn't spread out . . . . it run down the natural course; there was no place for it to spread, there was just a little ditch. . . . .

"Q. And the water when it comes out of the ground flows over the ground, doesn't it?

"A. No, it didn't flow over the ground it run in a ditch; it didn't flow over the top of the ground.

"Q. Well, it does now?

"A. Yes, its been dragged and there's no ditch now.

"Q. Its now in the same condition it was originally, isn't it?

"A. No, it's not.

"Q. What's the difference?

"A. Its all tramped full of dirt and mud."

George R. Jones, a brother of Val Jones, was 17 years of age in 1901 and remembered as far back as he was capable of remembering prior to 1901, and testified:

"Q. At the time you first became acquainted with these springs how did the water find its way off the McIntire property?

"A. Well, it came from the spring into a channel under the partition fence, and after they got through the partition fence each stream came together inside the Val Jones place, that my father owned at that time.

"Q. Was there one ditch at each spring?

"A. Yes, sir."

T. B. Jones on rebuttal testified:

"Q. Did the springs at that time (1885) rise in a basin or hole?

"A. Not a basin—in a hole.

"Q. How large a hole was it?

"A. Well, I would judge it would be about 3 feet maybe across the head of it and it narrowed down as it run from the side.

"Q. And the water from those springs did what?

"A. Ran into my field, or the field I had.

"Q. In how many channels?

"A. Two.

"Q. One from each spring?

"A. Yes."

George Jones on rebuttal:

"Q. Describe the springs as they existed in 1885, Mr. Jones.

"A. The west spring as it existed in 1885 it was a well defined channel from the spring to the north or probably a little to the northwest, and the water flowed in the bottom of this channel down onto the land that is now the Jones land.

"Q. And the east spring?

"A. And the east spring flowed to the north and west a little, down onto what is now the Jones land."

The situation presented is that the court made findings, amply sustained by the evidence that the water of the springs *flows* across the boundary line to and upon the lands of appellants *under natural conditions* and that appellants' predecessor in interest *appropriated upon his own land,* not upon the land of respondent, applied to a beneficial use, and *continuously and uninterruptedly used all the water which flowed* from respondent's land under natural conditions to and upon the land of appellants. The court concluded however:

"1.

"That the said defendant and cross complainant, Alva McIntire is the owner of the use and the right to the use *of all of the waters* of the said springs rising upon the premises owned by her, and has the right to permit the water rising in said springs to flow over and upon the lands of the said defendant and cross complainant, and to use the same, *and the whole, or any part thereof, for irrigation,* and stock raising purposes."

and:

"2.

"That the plaintiffs have no right, title, claim or interest in or to the waters of the said springs rising upon the lands of the defendant and cross complainant, Alva McIntire, while the same remains upon the said premises or until the same flows from the land of the said defendant and cross complainant to and upon the lands of the plaintiffs."

and entered judgment dismissing appellants' complaint and adjudging respondent Alva McIntire to be the owner of described lands and:

*"all water rising upon said premises,* including the water rising from two certain springs near the North boundary line

thereof, so long as the same shall remain upon said lands, and is entitled to have the said water spread or flow over her said land and to use the same or any part thereof, for irrigation, stock and domestic purposes *or any other purpose or purposes to which she may desire to apply said water.*"

The right of riparian ownership has been abrogated in Idaho. (Sec. 3, art. 15, Idaho Const.; secs. 41–101, 41–103, 41–106, I. C. A.; *Hutchinson v. Watson Slough Ditch Co.,* 16 Ida. 484, 101 Pac. 1059, 133 Am. St. 125.) While the rule prevails that lakes of a surface area of less than five acres and pools and springs, located *wholly* upon and within the lands of a person or corporation, are appurtenant to and a part of the lands and belong exclusively to the owners of the land (sec. 41–206, I. C. A.; *Kinnison et al. v. McMillan Sheep Co. et al.,* 46 Ida. 754, 270 Pac. 1062; *Hall v. Taylor,* 57 Ida. 662, 67 Pac. (2d) 901; *Washington County Irr. Dist. v. Talboy,* 55 Ida. 382, 43 Pac. (2d) 943; *Marshall v. Niagara Springs Orchard Co., Ltd.,* 22 Ida. 144, 125 Pac. 208; *Tobey v. Bridgewood,* 22 Ida. 566, 127 Pac. 178; *Public Utilities Com. v. Natatorium Co.,* 36 Ida. 287, 211 Pac. 533; *King v. Chamberlin,* 20 Ida. 504, 118 Pac. 1099), it is also well settled that the waters of natural springs, which form a natural stream or streams flowing off the premises on which they arise, are public waters subject to acquirement by appropriation, diversion and application to a beneficial use. Section 41–103, I. C. A., provides:

"The right to the use of the waters of rivers, streams, lakes, springs, and of subterranean waters, may be acquired by appropriation."

and section 41–101, I. C. A., provides:

" . . . . All the waters of the State, *when flowing in their natural channel, including the waters of all natural springs,* and lakes within the boundaries of the state are declared to be the property of the State, whose duty it shall be to supervise their appropriation and allotment to those diverting the same therefrom for any beneficial purpose, and the right to the use of any of the waters of the State for use or beneficial purposes is recognized and confirmed."

*Bachman v. Reynolds Irr. Dist.,* 56 Ida. 507, 55 Pac. (2d) 1314; *Marshall v. Niagara Springs Orchard Co., Ltd.,*

22 Ida. 144, 125 Pac. 208; *Short v. Praisewater*, 35 Ida. 691, 208 Pac. 844. In view of the court's finding that the waters of the springs under natural conditions flowed from the land of respondent Alva McIntire to and upon the lands of appellants, under the foregoing authorities such waters were public and subject to appropriation. The court having found that appellants appropriated and diverted the waters, without having initiated their right in trespass upon private lands, and had applied the same to a beneficial use in 1885 and had continuously and uninterruptedly used the same for beneficial purposes, appellants' appropriation was complete and they were entitled to a decree for the amount of water appropriated and applied to such continuous and uninterrupted beneficial use. (*Pyke v. Burnside*, 8 Ida. 487, 69 Pac. 477; *Sand Point Water & Light Co. v. Panhandle Dev. Co.*, 11 Ida. 405, 83 Pac. 347; *Nielson v. Parker*, 19 Ida. 727, 115 Pac. 488; *Washington State Sugar Co. v. Goodrich*, 27 Ida. 26, 147 Pac. 1073; *Basinger v. Taylor*, 30 Ida. 289, 164 Pac. 522; *Reno v. Richards*, 32 Ida. 1, 178 Pac. 81; *Sarret v. Hunter*, 32 Ida. 536, 185 Pac. 1072; *Rudge v. Simmons*, 39 Ida. 22, 226 Pac. 170.)

It is conceded by the allegations of the complaint and was at the trial and in the briefs of appellants that respondent Alva McIntire has a superior right to the waters of the springs for the purposes of watering stock therefrom and the evidence establishes that 8 to 10 acres of land are dampened or wet by such springs. As heretofore stated it is also conceded that appellants are without right to enter upon the lands of respondent without consent for the purposes of cleaning out the springs, digging trenches or ditches to convey the waters to and upon appellants' land, appellants' right to the use of the waters of the springs being limited to such waters as naturally flow from the springs to and upon their lands.

The judgment should be reversed and the cause remanded with instructions to the trial court to modify its conclusions in accordance with the views herein expressed and to modify its judgment in accordance with the views expressed by decreeing to appellants a right to the use of the water, if

any, which under natural conditions flows onto appellants' land from the springs on respondent's land, and it is so ordered.

Costs awarded to appellants.

Ailshie, C. J., and Givens, J., concur.

Morgan and Holden, JJ., dissent.