186 P.2d 870

**MAHER v. GENTRY.**

**GENTRY v. MAHER et al.**

**No. 7365.**

Supreme Court of Idaho.

Nov. 21, 1947.

Paul G. Eimers, of Grangeville, and Leo McCarty, of Lewiston, for appellant.

Cox, Ware & Stellmon, of Lewiston, for respondent.

MILLER, Justice.

Minnie Maher, plaintiff and appellant, filed her complaint, in this action, on the 9th day of July, 1946, by which she sought to quiet title to the waters of a spring which arises on land now owned by William A. Gentry, defendant and respondent, and she also sought to quiet title to an easement for a pipe line conveying the waters of said spring to land owned by her. Defendant and respondent filed an answer denying the material allegations of the complaint and also filed a cross-complaint, praying that he be decreed to be the owner of said waters of said spring and that plaintiff and appellant be enjoined from interfering with the waters thereof.

The appellant and respondent were married, January 10, 1910, and during that year filed a government homestead on 320 acres of the public domain in what is known as

Rocky Canyon, Idaho County, Idaho. They moved onto said homestead in the early part of 1911, they erected a dwelling house and outbuildings and established a residence thereon. 160 acres of the homestead was later sold. They lived upon and improved the remaining 160 acres until about 1918 when they moved to Cottonwood. During this period of time, three springs of water were developed upon the premises, the "upper spring" and the "lower spring" on what is now Mrs. Maher's land, and the spring in dispute which rises upon and is now Mr. Gentry's land. From 1918 to 1928 they commuted back and forth between Cottonwood and the ranch property.

A property settlement and agreement was entered into June 27, 1933. A decree of divorce was made and entered July 20, 1933, based upon the property settlement and which decreed in part that said parties owned said homestead as tenants in common and awarded to each an undivided one-half interest therein. Thereafter, and during the year 1935, the parties decided to divide said homestead between themselves and to partition the same, upon the ground, by a division fence. It was finally agreed that the 160 acre tract should be divided by line drawn through the center east and west. Respondent gave appellant her choice of said 80 acre tracts and she chose the north one-half upon which was located all of the improvements, most of the developed truck garden land and two of the springs of water then developed, leaving the south one-half of said 160 acres for the respondent and upon which is located the spring of water in dispute. The division of the springs of water then developed on the homestead, was specifically discussed between them and they agreed that the water of the springs should follow the title to the land; that appellant would have the water from the two springs on her north one-half and respondent would have the water from the spring on his land. September 11, 1935, quit claim deeds were made, executed and delivered between the said parties, by which respondent conveyed to appellant the north 80 acre tract and the appellant conveyed to respondent the south 80 acre tract. This was done by appellant's choice. All three of these springs were developed and used during all those years for the benefit of and each was appurtenant to the entire 160 acre tract.

Appellant moved from her 80 acre tract in 1935 and has used her place specifically for pasturing 7 or 8 head of cattle. Her place was vacant from about 1939 to 1945, except for a few transient workers. No examination whatever was made of the water pipe line between these springs by appellant during all these years until 1945, when the water would not run to the house and upon examination wooded plugs were found driven into the ends of the pipe at the house and barn. When these plugs were removed "there was plenty of water; lots of it."

In 1938, respondent, who had remarried in the meantime, came back to Rock Creek and began building another home and truck garden and orchard tract on the tillable soil on his 80 acre tract. That fall he plowed up a small tract above the house and the next spring planted an orchard and garden and began using all the waters of the spring in question, and used it thereon continuously by open ditch until the spring of 1946, at which time he put in a pipe line from said spring to said orchard and garden. Since 1939, respondent used all of the water from said spring and all of the water is necessary to irrigate said orchard and garden tract. Respondent actually measured the flow of water from the spring and the "upper spring" on appellant's land; said "upper spring" flows more water than the spring in dispute and both are year-round springs. The water from appellant's "upper spring" was going to waste, although it would cost only $150 to pipe the water from that spring down to her "lower spring". The water from the springs on appellant's land and from the spring on respondent's land sinks into the soil and none of the waters therefrom flows off the premises upon which the same rises.

There never was any shortage of water at appellant's house except in the spring of 1945 when she found wooded plugs driven into the pipes and in 1946 her "lower spring" went dry for the first time, at which time appellant claimed to have some interest in the spring on respondent's land, although she had previously tried to buy the same from respondent and referred a prospective buyer of her 80 acre tract to respondent for information concerning his spring, being the one now in dispute.

The cause came on for trial October 15, 1946, upon the complaint of the appellant and the cross-complaint of respondent. Oral and documentary evidence having been heard, submitted and considered and the case having been taken under advisement, the parties having submitted the case to the court upon written briefs and arguments and the court being fully advised in the premises, on the 31st day of January, 1947, made and filed its findings of fact, conclusions of law and decree. The court found that Minnie Maher and James Maher were then husband and wife; that the plaintiff and cross-defendant Minnie Maher is the owner and in possession of certain described lands, described in Paragraph I, of her complaint; that the defendant and cross-plaintiff, William A. Gentry, is now and all of the time since September 11, 1935, has been the owner in fee simple absolute, in the possession and entitled to the possession of the 80 acres of land situate in Idaho County, to wit: S½NW¼SE¼; S½NE¼SW¼; S½NW¼SW¼; NW¼NW¼SW¼; W¼SW¼NW¼ of Section 18, Township 30 North, Range One East of the Boise Meridian; that there is on the real property belonging to the defendant and cross-plaintiff, William A. Gentry, a spring of water which rises to the surface of the

ground thereon, but does not flow off said premises; that the allegations contained in plaintiff's and defendant's complaint that she and her grantors and predecessors in interest were the owners in possession and entitled to the possession of one certain spring of water, which is mentioned in Paragraph IV hereof, together with an easement for pipe line right-of-way upon and across the land of defendant and cross-plaintiff hereinbefore described and that said spring and right-of-way has been in continuous use by said plaintiff and cross-defendant and the predecessors in interest of the plaintiff and cross-defendant hereinbefore described, for more than 30 years prior to the filing of her complaint, except when such use was interrupted and interfered with by the wrongful and malicious action of the defendant and cross-plaintiff, are not established by the evidence, but that on the contrary thereof, the ownership and the beneficial use of the waters of said spring by the parties hereto, prior to September 11, 1935, was a joint ownership and used either as a community or as tenants in common for the joint use and benefit of each and upon and for the use and benefit of the entire community real property hereinbefore described and that the defendant and cross-plaintiff, William A. Gentry, did not by quit claim deed convey to plaintiff and cross-defendant, nor did the parties nor either of them intend that the said quit claim deed should convey to plaintiff and cross-defendant an easement or any other right whatever in and to the use of the waters of said spring over or across the lands owned by defendant and cross-plaintiff for the purpose of using and maintaining a water pressure box at or a pipe line from said spring as an appurtenance to the land owned by plaintiff and cross-defendant and heretofore described, or otherwise or at all; and that said plaintiff and cross-defendants, or either of them, have not obtained by grant, estoppel, adverse possession, conveyance or otherwise or at all any estate or right of, in, or to the said real property owned by the defendant and cross-plaintiff, William A. Gentry, of the waters of the spring rising thereon and mentioned and described in plaintiff's complaint and defendant's answer and cross-complaint herein; that the defendant and cross-plaintiff, William A. Gentry, is now and at all times since September 11, 1935, has continuously been the owner in fee simple absolute, in possession and entitled to the possession and use and has been in the undisputed, open notorious, adverse and exclusive possession and has paid all the taxes on all property hereinabove described and the whole thereof, together with the spring of water which rises to the surface, together with the right to the flow of water from said spring under claim of title; that the plaintiff's and cross-defendants' assertion of the right to the use of water of said spring and an easement over and across said real property owned by the defendant and cross-plaintiff

and to use and maintain thereon a pipe line to pipe the waters of said spring over and across a portion of said land owned by defendant and cross-plaintiff, is adverse to the title of the defendant and cross-plaintiff, William A. Gentry; that the aforesaid claims and all claims of said plaintiff and cross-defendants are but purported claims without color and without merit or right; that said plaintiff and cross-defendants, or either of them, have no right, title, claim or interest whatever of, in or to said real property owned by the defendant and cross-plaintiff, William A. Gentry, or any right, interest or easement therein or any right, title, claim, interest or demand in or to the use of the waters of the spring arising thereon, and that the title of the defendant and cross-plaintiff of, in and to the real property together with the spring of water rising thereon, should be quieted against the claims of the plaintiff and cross-defendants, and all persons claiming or to claim by, through or under them, or either of them.

From the findings of fact the court concludes: That the complaint of Minnie Maher should be dismissed; that her prayer for the issuance of an injunction should be denied; that a decree should be entered declaring that the plaintiff and cross-defendants have no easement, right, title, claim, interest or demand of any kind or character in, of or to the following described real property, situate in Idaho County, Idaho, to wit: S½NW¼SE¼; S½NE¼SW¼; S½NW¼SW¼; NW¼NW¼SW¼; W¼SW¼NW¼ of Section 18, Township 30 N., Range One East of Boise Meridian, containing 80 acres more or less. Together with the spring of water involved in this action and which arises to the surface of the ground thereon.

The decree, among other things, provides that plaintiff's complaint together with her prayer for injunction be and the same is hereby dismissed; that the plaintiff and cross-defendants, or either of them, have not, nor has any person or persons claiming by, through or under them, or either of them, any easement, appurtenance, right, title, estate, interest, equity, claim or demand of any kind whatsoever of, in, or to the real property hereinabove described, including the spring of water arising to the surface of the ground thereon and involved in this action, that the same is forever quieted in the said defendant and cross-plaintiff against the purported claims of the plaintiff and cross-defendants, as set forth in their complaint and answer to cross-complaint herein, and all persons claiming or to claim by, through or under them, or either of them are hereby forever barred from asserting or maintaining any easement, claim, demand, interest, right, estate, equity or title whatsoever of, in or to the said real property, or any part thereof, or interest therein.

March 10, 1947, appellant filed and served her notice of appeal. August 12 1947, re-

spondent filed a motion to dismiss said appeal and the same came on for consideration before this court in connection with the hearing on the merits. We think said motion should be denied for the reason that respondent does not appear to have been prejudiced as a result of the matters and things upon which said motion is based, and filed his brief and argued the same before this court as though no such motion had been made and presented.

Appellant submits IX Specifications of Error, all of which relate to asserted error in the findings of fact, conclusions of law and judgment and decree. At page 18 of the brief it is stated:

"There are just two questions to be answered on this appeal, to-wit:

"I. Does the developing of a spring of water and conducting the water therefrom through a pipeline and used for domestic use, and for irrigating purposes, for a period of more than Thirty years ripen into a permanent water right for the land upon which such water is so used, and become an appurtenance to the land upon which it is so used.

"II. Does a deed of conveyance of land containing the clause 'together with appurtenances' also convey a water right which has been continuously used on the land conveyed, for more than twenty years for irrigation purposes and domestic use, and such use is well known to the grantor at the time of the conveyance."

We take it for granted that appellant assumes that the record in the case supports said questions. But it does not as has been shown. The findings disclose that the allegations of the complaint to the effect that the waters of the spring together with an easement for a pipe line right-of-way having been in the continuous use of plaintiff for more than 30 years, are not established by the evidence but that prior to September 11, 1935, was a joint ownership and used either as a community use, or as tenants in common and for joint uses and benefits.

The record shows that the waters from said spring rises and sinks on respondent's land. The matter is disposed of under the provisions of Section 41-206 I.C.A., wherein it is said: "Diversion of Private Waters —The department of reclamation is hereby prohibited from issuing or granting permits to divert or appropriate the waters of any lake not exceeding five acres in surface area at high-water mark, pond, pool or spring in this state, which is located or situated wholly or entirely upon the lands of a person or corporation, except to the person or corporation owning said land, or with his or its written permission, executed and acknowledged as required for the conveyance of real estate."

We invite attention to the case of Jones v. McIntire, 60 Idaho 338, 91 P.2d 373, 379, being an identical case and wherein it is said: "The right of riparian ownership has been abrogated in Idaho, Sec. 3, Art. XV, Idaho Constitution; Secs. 41-101,

566

41-103, 41-106, I.C.A.; Hutchinson v. Watson Slough Ditch Co., 16 Idaho 484, 101 P. 1059, 133 Am.St.Rep. 125. While the rule prevails that lakes of a surface area of less than 5 acres and pools and springs, located wholly upon and within the lands of a person or corporation, are appurtenant to and a part of the lands and belong exclusively to the owners of the land (Sec. 41-206, I.C.A.; Kennison et al. v. McMillan Sheep Co. et al., 46 Idaho 754, 270 P. 1062; Hall v. Taylor, 57 Idaho 662, 67 P.2d 901; Washington County Irr. Dist. v. Talboy, 55 Idaho 382, 43 P.2d 943; Marshall v. Niagara Springs Orchard Co., Ltd., 22 Idaho 144, 125 P. 208; Tobey v. Bridgewood, 22 Idaho 566, 127 P. 178; · Public Utilities Comm. v. Natatorium Co., 36 Idaho 287, 211 P. 533; King v. Chamberlin, 20 Idaho 504, 118 P. 1099), it is also well settled that the waters of natural springs, which form a natural stream or streams flowing off the premises on which they arise, are public waters subject to acquirement by appropriation, diversion and application to a beneficial use. Section 41-103, I.C.A. provides: 'The right to the use of the waters of rivers, streams, lakes, springs, and of subterranean waters, may be acquired by appropriation,' and section 41-101, I.C.A., provides: '* * * All the waters of the state, when flowing in their natural channels, including the waters of all natural springs, and lakes within the boundaries of the state are declared to be the property of the state, whose duty it shall be to super-vise their appropriation and allotment to those diverting the same therefrom for any beneficial purpose, and the right to the use of any of the waters of the state for useful or beneficial purposes is recognized and confirmed.' "

In the case of Chatterton v. Luker, 66 Idaho 242, 261, 158 P.2d 809, 817, in quoting from the case of Checketts v. Thompson, 65 Idaho 715, 152 P.2d 585, it is said:

· " 'This Court has repeatedly held that where conflicting evidence is submitted to a trial court sitting without a jury, either as a court of law or as a court of equity, the findings of the court on questions of fact will not be disturbed, where there is competent evidence to support them. Viel v. Summers, 35 Idaho 182, 209 P. 454; Davenport v. Burke, 30 Idaho 599, 167 P. 481; Lus v. Pecararo, 41 Idaho 425, 238 P. 1021; Collins v. Hibbard, 48 Idaho 178, 279 P. 619; Snell v. Stickler, 50 Idaho 648, 299 P. 1080; State v. Snoderly, 61 Idaho 314, 101 P.2d 9; Roddy v. State, 65 Idaho 137, 139 P.2d 1005; Picciano v. Miller, 64 Idaho 759, 137 P.2d 788; McCarty v. Sauer, 64 Idaho 748, 136 P.2d 742.'

"And again in the case of Nelson v. Altizer, 65 Idaho 428, 144 P.2d 1009, 1014, it is said: 'Furthermore, where the facts " 'might very well lead different minds to reaching different conclusions upon the issue presented; and where such is the case, however meager the evidence, if it is of a substantial nature and character (as in the instant

case), the findings of the triers of fact should prevail.' McKissick v. Oregon Short Line R. Co., 13 Idaho 195, 89 P. 629; Fleenor v. Oregon Short Line R. Co., 16 Idaho 781, 803, 102 P. 897; Denton v. City of Twin Falls, 54 Idaho 35, 43, 28 P.2d 202; Call v. City of Burley, 57 Idaho 58, 62 P.2d 101, 105." Dickey v. Clarke, 65 Idaho 247, 142 P.2d 597, 602.' "

"And, again, in the case of Wieri v. Anaconda Copper· Mining Co. 116 Mont. 524, 156 P.2d 838, 841, it is said:

" 'On the review of a decision of the District Court the presumption is that the decree of that court is correct (citing cases), and that its judgment will not be set aside unless there is a clear preponderance of the evidence against it.' "

Since the waters of the spring, involved in this case, constitute "private waters" and the Department of Reclamation is prohibited from issuing or granting permits to divert or appropriate the same, it follows from the record in this case, that any claim of appellant to the right to the use thereof in absence of strict compliance with the provisions of Section 41-206, supra, is without merit, and the judgment and decree of the trial court is affirmed.

Costs to respondent.

BUDGE, C. J., and GIVENS, HOLDEN and HYATT, JJ., concur.