(March 8, 1906.)

## PETER BROWN, Respondent, v. WM. W. NEWELL, Appellant.

[85 Pac. 388.]

WATER RIGHT—DIVERSION AND APPROPRIATION—TRANSFER OF POSSESSION AND TITLE—CONTINUITY OF TITLE.

1. Where H. in 1899 settled on unsurveyed public lands and opened up an old ditch which had been constructed and used by a previous settler, and put in a headgate and conveyed the waters of a stream one hundred and fifty feet to and upon the lands claimed by him, and in the following year extended the ditch so as to better distribute the water over his claim, the water right so acquired is entitled to date from the time when the water was actually delivered upon the ground for the use of which it was diverted.

2. Where B. entered into an agreement and contract with H. for the purchase of a claim or squatter's right on unsurveyed lands of the United States, and the ditch and water right belonging thereto and used therewith, and paid a part of the purchase price, and was thereupon let into possession which he held continuously thereafter, and two years later received a deed from H. for such property, B.'s chain of title will not be broken by such contract and change of possession so as to allow an intervening appropriator a priority over B.'s water right.

3. Question as to power of the trial court to reopen a case for the introduction of further evidence after adjournment of the term at which the case was tried and submitted, reserved.

(Syllabus by the court.)

APPEAL from District Court of Fourth Judicial District for Elmore County. Hon. Lyttleton Price, Judge.

Defendant appealed from the judgment and order denying the motion for a new trial. *Affirmed.*

Wyman & Wyman, for Appellant Newell.

A water right may be acquired without any compliance whatever with the statutes relating to the location of water. "A person deciding to appropriate the waters of a stream may do so either by actually diverting the water and applying it to a beneficial purpose, or he may pursue the statutory methods

by posting and recording his notice, then commencing and prosecuting his work within the statutory time." (*Sand Point W. & L. Co. v. Panhandle D. Co.,* 11 Idaho, 405, 83 Pac. 347.) "When an appropriator of water does not post and file notice of location as provided by law, his right only dates from the last act perfecting such appropriation." (*Pyke v. Burnside,* 8 Idaho, 487, 69 Pac. 477.)

The purpose and object of the legislature was merely to define with precision the conditions upon which the appropriator of water could have the advantage of the familiar doctrine of relation. (*De Necoches v. Curtis,* 80 Cal. 397, 20 Pac. 563, 22 Pac. 198; *Murray v. Tingley,* 20 Mont. 260, 50 Pac. 723; Farnham on Water Rights, sec. 663.)

As between two appropriators, neither of whom has complied with the statutes requiring. the posting and recording of the notice of appropriation, the one who has his ditch completed and the water flowing over his land first has the superior right, notwithstanding the other first commenced work on his ditch. (17 Am. & Eng. Ency. of Law, 498; Long on Irrigation, 72.)

A statute as to notice is to be construed strictly and rights can be acquired under it only by strict compliance with its terms. (Long on Irrigation, secs. 37, 51; *Taylor v. Abbott,* 103 Cal. 421, 37 Pac. 408; 17 Am. & Eng. Ency. of Law, 502; *Murray v. Tingley, supra; Umatilla I. Co. v. Barnhart,* 22 Or. 366, 30 Pac. 30 (37).)

Respondent's grantor had been out of possession for more than two years when he gave the deed. This is the exact condition of fact that existed in the case of *McGinnis v. Stanfield,* 6 Idaho, 372, 55 Pac. 1020, where this court held such deed to be without effect.

Before secondary evidence can be introduced, it must be shown that a diligent and unsuccessful search was made for the document. (25 Am. & Eng. Ency. of Law, 165.) A deed or other instrument deposited as an escrow is nothing more than a mere scroll until the condition is fully performed or the contingency happens upon the faith of which it was deposited; and this being so, no title passes prior to that time

without the grantor's consent. (11 Am. & Eng. Ency. of Law, 348, 349.)

E. M. Wolfe, for Respondent.

A person may add from year to year acreage to his cultivated land, and increase his application of water thereto for irrigation as his necessities may demand or as his abilities permit, until he has put to a beneficial use the entire amount of water at first diverted by him and conducted to the point of intended use. (*Conant v. Jones,* 3 Idaho, 606, 32 Pac. 250; *Hall v. Blackman,* 8 Idaho, 272, 68 Pac. 19.)

The deed of respondent's grantor conveyed all of his interest in the property described to respondent. (*Day v. Cohn,* 65 Cal. 508, 4 Pac. 511.)

## STATEMENT OF FACTS.

This is a contest between two appropriators and users of the waters of Deer Creek in Elmore county. It appears from the evidence that Richard Horton, the predecessor in interest of the plaintiff, settled upon unsurveyed government land on Smith's prairie, in Elmore county, about August 1, 1899. Horton testified on behalf of the plaintiff as follows: 'I went upon the land belonging to the plaintiff about August 1, 1899. That fall I cleaned out what ditch there was dug there—that is, a little—and ran it down through there, and then went on with the survey, and found out that the ditch was an old survey by Peterson, who had been on the ground before I went there, was too high. I resurveyed it and cut out some brush, and then winter was on, and I went down to Highland valley and stayed that winter. Within one hundred and fifty feet of the headgate the ditch struck the line of my land. The water was running in that ditch when I went there. I cleaned it out, and had a little more put into it, before I left that fall. I cut between twenty-five and thirty acres of hay, in 1900, and had about one-half of an acre in garden, and a little patch of wheat for a trial patch. There was no person on the Newell lands when I went there. I im-

proved the land during the summer of 1900, and also irrigated it and cut hay from it in 1901. Mr. Pierce cut the hay that year. In 1902, I sold to the plaintiff Brown. I judge that the ditch would carry two hundred inches after I cleaned it out in the fall of 1899. In 1900 and 1901, I used all of the water of the creek along in July and August.

"The man who was on the land before me had abandoned it. I put in a headgate and cleaned out the ditch a little. It was a little over one hundred feet long when I went there. I put in a small headgate made of old drygoods boxes and one thing and another. I made a sort of temporary gate—done well enough; I took a couple of hours to make it and put it in. It took me about one-half day to clean out the ditch, using pick and shovel. That ditch ends right in the field, a little draw that runs down onto the place. I went on the ground some time in August, and the work above mentioned was done about two months later. I left the property in December. The survey ran too high—either on a dead level or up. The water has been running in that ditch ever since I turned it in in the fall. It is running in there now. From the end of that ditch I commenced my survey. · I used that portion of it dug. I began constructing the ditch next spring, the latter end of April, and worked on and off all the time till I got it done, up into the latter end of June. I had water running in on that place—I got the ditch dug the latter end of June, 1900. The hay on the place is wild hay. I sold to plaintiff May 20, 1902. He took possession at that time. I used all the water there was in the creek during July and August of 1900 and 1901."

The plaintiff Brown testified that he took possession of the land on May 20, 1902, receiving possession from Horton; that he had a written agreement with Horton which was left in escrow with one Baker. That Baker thereafter died, and that plaintiff, prior to the trial, made inquiry of Baker's wife concerning this escrow, and that she could not find it, and that he (plaintiff) did not know the whereabouts of that agreement or contract. He further testified that by virtue of the contract or agreement, Horton conveyed the land and water right in

question to the plaintiff, and that plaintiff had paid the sum of $40 on the purchase price at the time the agreement was made and possession delivered.   On June 2, 1904, Horton executed and delivered to plaintiff a deed for the land and water right described in the complaint, whereby he conveyed all of his rights, title and interest in and to the property in question.   Plaintiff continued to cultivate and irrigate the land from the time of his purchase from Horton until the trial of this case.

On May 9, 1900, the defendant Newell settled on a part of the unsurveyed public domain which now belongs to him. Two days previous to that time, his brother, who claimed to be a partner, had made settlement, and commenced to open up an old ditch, and within a couple days the two completed the ditch and turned water through it and onto their land, and have continued ever since to use the water in the irrigation of their land.   Defendant is the successor by purchase to all the interest of his brother.   At the trial, after the plaintiff had shown the settlement, appropriation and diversion by his predecessor and grantor, Horton, and his purchase from Horton, and entry into possession, and subsequent use and application of the water, he offered to prove the nature of the agreement entered into between him and Horton at the time he took possession.   The defendant objected on the grounds that it was not the best evidence, and plaintiff had not shown diligence in his effort to produce the original contract which was in writing.   The district court appears to have ruled with the defendant upon this objection, and thereupon the defendant introduced evidence showing his settlement, and also his appropriation and diversion of the waters of Deer creek. The case appears to have been closed and submitted to the court on November 3, 1904, with the understanding that briefs were to be furnished by the respective counsel within ten days thereafter.   The court immediately adjourned the term.   No briefs were furnished by either side, but on the tenth day of December, the plaintiff filed and served a motion to reopen the case and allow him to introduce the written instrument which had been entered into and executed by Richard Horton to the

plaintiff on the twenty-first day of May, 1902. This motion was supported by the evidence of Mrs. N. J. Nauerth, who was, at the time the agreement was executed, the wife of L. B. Baker, the holder of the escrow. Thereafter, and at the February, 1905, term of the court, plaintiff's motion to reopen the case was heard upon the affidavit and agreement which was sought to be introduced, and the motion was granted by the court over the objection of defendant, and thereafter the case was called for hearing further evidence, and the agreement was offered in evidence by the plaintiff and admitted by the court, and is as follows:

"Smith's Prairie, Ida., May 21, 1902.
"ARTICLE OF AGREEMENT.

"This article of agreement, by and between R. Horton, of Smith's Prairie, Elmore County, Idaho, party of the first part, and Peter Brown, of the same place, party of the second part, witnesseth, that for the consideration of three hundred ($300) dollars, that the said R. Horton, bargains, sells and by these presents does convey to the said Peter Brown, all his rights, title and interest to a piece of land, known as the 'Buckley Ranch,' situated on Deer Creek, Smith Prairie, Elmore County, Idaho, together with all appurtenances belonging thereto. The considerations wherein the said party of the first part conveys and quitclaims the above-described property, are that the party of the second part, in payment thereof turns over to the party of the first part, one chestnut sorrel mare, age six years, branded with ———, on left shoulder, white strip in face, weight about 900 pounds; also one saddle mare and saddle, valued at forty dollars, also July 31st, 1902, the party of the second part is to pay the party of the first part, one hundred dollars ($100); also on October 25, 1902, the party of the second part is to pay to the party of the first part one hundred and sixty ($160) dollars.

"RICHARD HORTON,
"Witness:                      "PETER BROWN.
    "L. B. BAKER,
    "M. J. BAKER."

The case was finally submitted to the court, and he thereupon made and filed his findings of fact and conclusions of law. The court found that the plaintiff is entitled to a water right of one hundred and fifty inches from Deer creek, to date from March 28, 1900, and that defendant is entitled to a right of one hundred and fifty inches to date from May 12, 1900. The court appears to have found that plaintiff's appropriation should date from the posting of his notice of water location. Judgment was entered decreeing the rights and priorities of plaintiff and defendant in accordance with the findings. Defendant Newell has appealed from the judgment and order denying the motion for a new trial.

AILSHIE, J. (After stating the facts.)—It is contended by appellant that the acts of diversion and appropriation done by Horton in 1899 did not amount to an actual appropriation. It clearly appears from the evidence that the ditch was opened in the fall of 1899, and a headgate was put in and the water, to the amount of two hundred inches, was actually delivered on the Horton claim. These acts were followed up the next year by extending the ditch so as to more completely distribute the water over the entire claim, and this in turn was followed by cultivation of a larger acreage of the claim. We think the facts bring this case within the well-established rules of law both as to what constitutes an appropriation as well as the reasonable time in which the appropriator may apply the water to the intended use. (*Conant v. Jones*, 3 Idaho, 606, 32 Pac. 250; *Pyke v. Burnside*, 8 Idaho, 487, 69 Pac. 477; *Sandpoint W. D. L. Co. v. Panhandle D. Co.*, 11 Idaho, 405, 83 Pac. 347.)

Appellant further contends that the deed of June 2, 1904, from Horton to respondent Brown did not pass sufficient title to a possession with which he had parted some two years previously, so as to entitle the water right to date from the original diversion and appropriation by Horton. In support of this position appellant relies on the case of *McGinnis v. Stanfield*, 6 Idaho, 372, 55 Pac. 1020. That case differed from this in some respects. Here it clearly appears that Brown's pos-

session was obtained from Horton by contract of purchase, and that a part of the purchase price was paid at the time. It is clear that if the balance of the purchase price was thereafter paid, that Brown became the equitable owner and entitled to a conveyance, and that a court of equity would have so decreed, in which case the chain of title to the ditch and water right would have been continuous and complete from the perfecting of Horton's right. If a court of equity would enforce a conveyance, it must follow that a voluntary conveyance made by the grantor under the same state of facts would convey as good a title as the court could decree. On the other hand, if the purchase price was never paid by Brown in accordance with the contract, the title (except as against the government) remained in Horton, and Brown's possession remained, in contemplation of law, the possession of Horton. In either view of the case the water right was entitled to date from the original appropriation and application thereof by Horton.

For the foregoing reasons it is unnecessary for us to consider the validity of the water right notice and claim posted by Horton on March 28, 1900, or of the subsequent steps taken by him under that notice in his endeavor to comply with the law. The actual diversion and application of the water had preceded that date, and it therefore becomes unnecessary for us to consider the steps taken in regard to the posting and recording the notice and the prosecution of work thereafter.

Appellant complains of the action of the court in reopening the case and permitting the plaintiff to introduce the contract, agreement or conveyance of May 21, 1902, which had been placed in escrow with Baker by Horton and Brown. Without passing upon the question as to the right of the trial court to reopen a case after the adjournment of the term at which it was tried (a question the consideration of which we specifically reserve in this case), we are content to rest our decision on the point that it clearly appears in this case that the defendant was in no manner injured or prejudiced by the action of the court in this respect. It appears that upon the trial of the case the defendant had notice of the nature and character

of the agreement or contract, and that when it was actually produced in evidence it only confirmed the position taken and evidence previously produced by the plaintiff. The title had already passed by deed of June 2, 1904, which was in evidence. As stated above, we do not think anything we have said in this case is in conflict with the McGinnis-Stanfield case, but if it should be so understood, then it is the purpose of this decision to overrule anything contained in that case in conflict with what we have herein said.

The judgment of the lower court will be affirmed, and it is so ordered. Costs in favor of respondent.

Stockslager, C. J., and Sullivan, J., concur.