(May 3, 1924.)

ALICE H. RUDGE, Administratrix of the Estate of W. N. RUDGE, Deceased, Appellant, v. DAVID SIMMONS, NELLIE SIMMONS, NELLIE SIMMONS, Administratrix of the Estate of WARREN SIMMONS, Deceased; FLORA MAY SIMMONS, a Minor; ROBERT SIMMONS, a Minor; WALTER SIMMONS, a Minor; EDWARD WALLACE SIMMONS, a Minor, and NELLIE SIMMONS, as Guardian of the Persons and Estate of the Said Minors; CLARENCE W. JOY, THE UNION CENTRAL LIFE INSURANCE COMPANY, W. A. DRAKE, ZERELDA DRAKE, N. B. BARNES and MINERVA E. BARNES, Respondents.

ELLIS M. KENT, Appellant, v. DAVID SIMMONS, NELLIE SIMMONS, NELLIE SIMMONS, Administratrix of the Estate of WARREN SIMMONS, Deceased; FLORA MAY SIMMONS, a Minor; ROBERT SIMMONS, a Minor; WALTER SIMMONS, a Minor; EDWARD WALLACE SIMMONS, a Minor; and NELLIE SIMMONS, as Guardian of the Persons and Estate of the Said Minors; CLARENCE W. JOY, THE UNION CENTRAL LIFE INSURANCE COMPANY, W. A. DRAKE, ZERELDA DRAKE, N. B. BARNES, and MINERVA BARNES, Respondents.

[226 Pac. 170.]

WATER RIGHTS—APPROPRIATION—BENEFICIAL USE.

1. Where an appropriator initiates a right to appropriate water under the appropriation law as it existed in 1901 and completed his diversion works so as to enable him to convey the entire amount of water claimed to the point of intended use and no adverse rights have intervened, the appropriator has a reasonable time thereafter to apply the water so diverted to a beneficial use.

Publisher's Note.

Appropriation of water, see note in 60 Am. St. 799.

2. Where an appropriator of water has diverted and conveyed to his lands by means of a dam in the natural stream and a substantial ditch leading therefrom water in excess of the amount required to irrigate his cultivated land and used the excess for irrigating the remainder of his lands which consist of pasture and wild hay land, and thereby increased the productiveness of such uncultivated land, it constitutes a beneficial use of the excess water diverted.

3. Where one constructs an irrigating system and conducts water upon his land and thereafter continuously applies the same upon wild hay land for the purpose of making hay, or using such uncultivated land for pasture, where it substantially increases the productiveness thereof, he thereby secures a right to the use of sufficient water to irrigate such uncultivated land, this being a beneficial use.

APPEAL from the District Court of the Third Judicial District, for Elmore County. Hon. Henry F. Ensign, Judge.

Action to determine priority of water rights. Judgment for defendants. *Affirmed.*

Luther W. Tennyson, for Appellants.

Under the laws of this state a person may appropriate water, either by following the statutory method or by diverting the water and actually applying the same to a beneficial use, in which latter case the claimant's right dates only from the time he actually applies the water to a beneficial use. (2 Kinney on Irrigation, 2d ed., sec. 751, p. 1298; Long on Irrigation, 2d ed., sec. 126, p. 220; *Morris v. Bean,* 146 Fed. 423; *Murray v. Tingley,* 20 Mont. 260, 50 Pac. 723; *Reno v. Richards,* 32 Ida. 1, 178 Pac. 81; *Crane Falls etc. Co. v. Snake River etc. Co.,* 24 Ida. 63, 133 Pac. 655; *Rabido v. Furey,* 33 Ida. 56, 190 Pac. 73; *Haight v. Costanich,* 184 Cal. 426, 194 Pac. 26; *Washington State Sugar Co. v. Goodrich,* 27 Ida. 26, 147 Pac. 1073; *Basinger v. Taylor,* 30 Ida. 289, 164 Pac. 522.)

Since the adoption of our irrigation codes the appropriation of the waters of this state for future use can only be

made by following the statutory method of appropriation. (*Reno v. Richards, supra.*)

K. I. Perky and Frank T. Wyman, for Respondents.

Under the act of 1899, the appropriation was complete with the completion of the diversion works and the conducting of the waters to the place of intended use. The right by relation dates back to the first steps taken and the appropriator had a reasonable time after the perfecting of his rights within which to apply the water to a beneficial use. (*Basinger v. Taylor,* 30 Ida. 289, 164 Pac. 522.)

As the law stood at the time Norton initiated his rights and while he was digging his ditch, he had a reasonable time after the completion of his irrigation works within which to apply the water to a beneficial use. (*Conant v. Jones,* 3 Ida. 606, 32 Pac. 250; *Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19; *Brown v. Newell,* 12 Ida. 166, 85 Pac. 388.)

WILLIAM A. LEE, J.—This is an action to determine the priority of the rights to the use of the waters of Rock Creek, in Elmore county. Two suits were commenced but were consolidated and but one decree was entered. A motion for a new trial was made and denied and the case is here upon appeal from the order. After the actions were commenced other parties were made defendants by order of the court, but this is not material to the determination of the conflicting claims of the original parties to this action with regard to their respective rights of priority.

Appellants base their claim to a right of priority to the use of the waters of Rock Creek upon a joint application for a permit filed with the state engineer by W. N. Rudge, since deceased, and Ellis M. Kent, April 12, 1909. Rudge was subsequently granted, by the state engineer, a license to a perpetual right to the use of 2.4 cubic feet of water with a priority dating from April 12, 1909, and Kent was granted a license to the perpetual use of 3.2 cubic feet with a like priority. There is no contest over the amount nor date of the appellants' appropriations of water, except in

so far as such rights are claimed to be prior in time to the rights of respondents, who base their claim upon a right which they contend was acquired by one Norton, their prede, cessor in interest. Norton with his wife and son took up certain public lands on Smith's Prairie, in all about 640 acres, some time before Oct. 12, 1901, they being the first permanent settlers in this part of the country. He posted a notice claiming a right to the use of 500 inches of water from the natural flow of this stream and thereafter commenced the construction of a dam thereon and a ditch by which to convey this water to their lands, which diverting system was completed in 1906, and the water to the amount of 445 inches was actually conveyed to the place of intended use in that year, upon which lands respondent claims this water was used uninterruptedly until the controversy arose as to the right to the use of this water shortly before the commencement of this action in 1915. In 1906 the Nortons cleared and plowed portions of their land which they watered by surface irrigation. The remainder of the water was carried through their ditch to the higher lands and allowed to flow out in such a manner as to subirrigate a considerable area of their lands which had not been cleared and plowed but which was a natural meadow, that produced native grass sufficient to produce a partial crop of hay which they yearly harvested, and also upon the remainder of this land that was used for pasturing their stock.

The court found that the Nortons had posted a notice Oct. 12, 1901, and filed copies of such notice as required by the then existing law relating to the appropriation of water; that work was commenced within 60 days; that the ditch was completed within a reasonable time; that 445 inches of water was applied to beneficial use by Oct. 12, 1906, and thereafter the water was diverted and used continuously on the Norton lands in the manner above described; that the acreage was increased from year to year with diligence and as rapidly as possible under the existing circumstances; that respondents and their predecessors in interest have

made use of all of said 445 inches of water for irrigation at all times since Oct. 12, 1906.

Appellants assign as error the insufficiency of the evidence to support the following findings of the lower court: (1) that the Nortons commenced the excavation and construction of their dam and ditches within 60 days after posting the notice of the claim to the right to the use of the water of Rock Creek; (2) that the Nortons prosecuted the work on this dam and their ditches diligently and uninterruptedly to completion within a reasonable time from the inception of the work; (3) that on Oct. 12, 1906, respondent's predecessors in interest, the Nortons, had applied to a beneficial use, for the irrigation of these lands, 445 inches of water; (4) that during the irrigation season of 1906 and at all times thereafter the respondents and their predecessors in interest diverted and used the said 445 inches of water from Rock Creek for irrigation purposes; (5) that the irrigated acreage of said lands was increased from year to year with reasonable diligence and as rapidly as possible under the existing circumstances; (6) that respondents and their predecessors in interest have made a beneficial use of all of said 445 inches of water for irrigation of these said lands without interruption or interference and that the appellants have not used the water of Rock Creek adversely to the rights of respondents.

Appellants contend that the evidence is insufficient to sustain the above findings, and assign as error the decree of the lower court giving respondents a perpetual right to the use of 445 inches of water from Oct. 12, 1906. They contend that there was a failure on the part of the Nortons to increase the beneficial application of the water annually and with reasonable diligence and that the Nortons abandoned their right to the use of all water except such as was applied to the cultivated lands and which was necessary to irrigate these cultivated lands; that they had failed to extend the area of the cultivated lands and to apply the water claimed to have been appropriated by the Norton system with sufficient diligence to be entitled to the same

as against appellants' claim.    Appellants contend that there
is no evidence that the Nortons complied with the require-
ments of the law (Sess. Laws 1899, pp. 380–397), and that
since they did not do so their rights are measured by the
water they had actually put to a beneficial use at the time
appellants initiated their rights by an application for an
engineer's permit in April, 1909, which must be limited to
water applied to the cultivated lands.    That is, appellants
take the position that it does not matter how much water
respondents were diverting from the stream through the
Norton ditch at the time appellants made their filings for a
permit, respondents' rights are to be measured by the
amount of land they then had in cultivation and were irri-
gating.    Respondents do not claim that their right relates
back to the time Norton posted and filed the water notice.
Had appellants initiated their rights before the Nortons had
completed their ditch and had diverted the water of Rock
Creek to their land, the intended point of use, appellants
would have been in a position to contest their right on the
ground that they had not complied with the statutes as to
the diligence required after posting their notice.    The court
found Oct. 12, 1906, as the date the Norton right to this
water first attached.    If the Nortons complied with the
statutes with regard to diligence in constructing their canal
system their right would date from Oct. 12, 1901, the time
of posting the notice, under the doctrine of relation.    The
Nortons initiated their rights and started the construction
of their ditches while the law of 1899 was in force.    Under
it they had a right to claim an appropriation of water upon
the completion of their canal system and conducting the
water to the point of intended use and they had a reasonable
time thereafter to apply the water to a beneficial use.
(*Conant v. Jones,* 3 Ida. 606, 32 Pac. 250; *Hall v. Blackman,*
8 Ida. 272, 68 Pac. 19; *Brown v. Newell,* 12 Ida. 166, 85
Pac. 388.)

The court below found that the water was conducted to
the point of intended use and thereafter applied to a bene-
ficial use upon the Norton land from and after Oct. 12,
1906.    There is evidence to sustain this finding.    The testi-

mony is not seriously controverted that the ditch was completed and used to its capacity of 445 inches in that year and that a portion of this water has ever since been used on the cultivated lands and the remainder used to subirrigate the wild hay and pasture land. There is evidence that the wild hay and pasture lands were materially increased in productiveness after the water had been thus applied to them. In *Pyke v. Burnside,* 8 Ida. 487, 69 Pac. 477, it was held: "Where one constructs a ditch and conducts water upon his land year after year, and permits the same to spread out over wild hay land for the purpose of making hay, or using such land for pasture, he thereby secures the right to the use of sufficient water to irrigate such land, provided the amount of water so used is sufficient for that purpose, such use being a beneficial use."

No objection was taken to the finding that the ditch would carry 445 inches of water, or that the Nortons and respondents, their successors in interest, have used the ditch to its full capacity. The evidence shows that the ditch was used to its full capacity in 1906 and every year thereafter during the irrigation season. Norton testified that he increased the area of the cultivated land each year as rapidly as his circumstances would permit and that the water not used on the cultivated land was used to subirrigate the wild hay land and the pasture land. After the purchase by respondents from the Nortons they cultivated about 200 additional acres. The court found and the evidence supports the finding that the yield of the wild hay and pasture land was sufficiently increased to show a beneficial use.

We think the findings are sufficient to support the conclusion and the decree of the court below that respondents' predecessors in interest had made a valid appropriation of 445 inches of water out of the natural flow of Rock Creek, with date of priority from Oct. 12, 1906, and that there has been no abandonment of the right to the use of this water upon respondents' lands. The judgment below is accordingly affirmed, with costs to respondents.

McCarthy, C. J., and Budge and Wm. E. Lee, JJ., concur.