JEROME A. TRACY AND VELMA D. TRACY, HUSBAND AND WIFE, APPELLANTS AND CROSS-RESPONDENTS, *v.* RALPH CAPOZZI AND PAULA CAPOZZI, HUSBAND AND WIFE, RESPONDENTS AND CROSS-APPELLANTS.

No. 12825

March 29, 1982                                     642 P.2d 591

*Vargas & Bartlett* and *Phillip W. Bartlett,* Reno, for Appellants and Cross-Respondents.

*Hoy, Miller & Murphy, Chartered,* Reno, for Respondents and Cross-Appellants.

## OPINION

By the Court, Manoukian, J.:

This case is an appeal and cross-appeal from the trial court's judgment dissolving a preliminary injunction and awarding damages to respondents and cross-appellants. Appellants and cross-respondents, the Tracys (hereinafter "appellants"), contend that the trial court erred in its determination that appellants' own violation of the relevant restrictive covenant precluded their obtaining equitable relief for a like breach by respondents and cross-appellants, the Capozzis (hereinafter "respondents"). Respondents, in their cross-appeal, assert that the trial court erred in limiting the award of damages to respondents to the amount of the security bond posted by appellants. Finding no error, we affirm the lower court's decision in its entirety.

In October 1977, appellants filed a complaint seeking injunctive relief, alleging that respondents were about to build a home in the Frost Ranches Subdivision, in violation of the applicable Declaration of Covenants, Restrictions, Easements and Reservations. Appellants alleged, *inter alia,* that respondents had not obtained written approval of two of the three members of the subdivision's Architectural Committee as required by the Declaration of Covenants, Paragraph 12(a).

The trial court, without notice, issued a temporary restraining order based on appellants' verified complaint, restraining respondents from further excavation and construction and imposing a $1,000 security bond to be furnished by appellants.

Following a contested hearing in November 1977, a preliminary injunction was issued, and the court increased the security bond to $5,000. Respondents filed a Motion to Dissolve the Preliminary Injunction in December 1977, which was denied, after a hearing, in March 1978. At no time did respondents move for an additional increase in the security bond.

Following a trial on the merits, in June 1978, the trial judge entered an order dissolving the preliminary injunction. The court found that although only one Architectural Committee member signed the respondents' building plans, the general practice was to construct with only that one member's written approval. In addition, the court found that another Committee member had orally approved the plan. The court noted that appellants had never received written approval for their house which had been moved, already constructed, to the subdivision, in violation of both Paragraph 12 and 15[1] of the Declaration of Covenants. The trial court concluded that such violations precluded the injunctive relief requested by appellants.

Respondents substantially completed construction in March of 1979 and in April filed a motion for damages of $128,632 resulting from increased construction and loan interest costs. The district court granted respondents' motion only to the extent of the $5,000 security posted by appellants with the court, to apply to respondents' court costs and attorney's fees. This award was predicated on Paragraph 32 of the Declaration of Covenants, which provides that the prevailing party in an action to enforce the restrictions shall be entitled to recover attorney's fees. Although the court recognized that respondents' damages exceeded the bond, it refused an additional award because it determined that the preliminary injunction was obtained in good faith.

1. *Breach of Covenants.*[2]

Paragraph 12(a) of the Declaration of Covenants, in relevant part, provides:

> No . . . structure shall be commenced, erected, placed or altered on any lot . . . until . . . the building plans and specifications . . . have been submitted to and approved in

[1]Paragraph 15 prohibits moving a previously constructed house onto a subdivision lot.

[2]At oral argument, it was disclosed that the Tracys have sold their Frost Ranch home. Although this occurrence arguably renders moot the issue concerning the dissolution of the preliminary injunction, we find that issue inextricably tied to the remaining issue concerning damages. The latter issue (the cross-appeal) being clearly justiciable, we deem it necessary to address both the appeal and cross-appeal in this opinion.

writing . . . by an Architectural Committee composed of KARL S. BAKER, O. FRANK STOCK, and A REPRESENTATIVE OF MURRAY-McCORMICK ENVIRONMENTAL GROUP OF NEVADA, or any two of them or a committee of at least two persons appointed by them. . . .

It is uncontroverted that only one member of the Committee (Frank Stock) actually signed respondents' plans. Appellants contend that the single signature was a clear violation of the covenant and an appropriate basis for granting injunctive relief. They claim that their own failure to procure signatures of two committee members before construction on their lot did *not* constitute a waiver of their right to enjoin respondents' construction.[3] Several factors militate against appellants' contentions. The decision below was not based on a theory of waiver, but on the well-established defense to equitable claims that litigants seeking equity must come with "clean hands." Courts will usually deny injunctive relief if the complainant has violated the same restrictive covenant he seeks to enforce against a defendant. *See* Houston Petroleum Co. v. Automotive Products Credit, 87 A.2d 319 (N.J. 1952); Vandershoot v. Kocher, 72 N.Y.S.2d 121 (Supr.Ct. 1947); Reading v. Keller, 406 P.2d 634 (Wash. 1965); 5 R. Powell, *The Law of Real Property,* § 679 (1981); *cf.* Gladstone v. Gregory, 95 Nev. 474, 596 P.2d 491 (1979) (right to enforce one restrictive covenant not lost by acquiescence in the violation of another).

An exception to this rule is recognized if the complainant's violation is insignificant, but defendant's infraction is substantial. *See* Reading v. Keller, *supra* at 636, and Powell, *supra*. In the instant case, the violations of plaintiffs and defendants, relating to the procedure of obtaining building plan approval, were identical. We find no justification for applying the exception to the "unclean hands" doctrine under the circumstances of this case. Appellants cannot seek to enjoin respondents, based on a violation of the self-same covenant they previously violated. The trial court properly dissolved the preliminary injunction.[4]

---

[3]Paragraph 30 of the Declaration of Covenants provides that delay or failure to exercise any right shall not constitute a waiver nor shall waiver be predicated on any course of conduct.

[4]We find that the alternative argument of respondents—that the general practice was to obtain the signature of only one Committee member and oral approval of another—to have considerable merit, but in light of our

## 2. *Limitation of Damages.*

The district court refused to award damages (other than attorney's fees) to respondents because it found the preliminary injunction was obtained in good faith, and thus was not "wrongful" under NRCP 65(c).[5] Attorney's fees to the extent of the bond were awarded, as required under the Declaration of Covenants. Appellants' "good faith" in pursuing injunctive relief is not disputed by respondents, nor do appellants contest on appeal the propriety of the award below, assuming the dissolution of the injunction was proper.

Preliminarily, we note that our position has been and remains that injunctive restraints are "wrongful" and recovery on the bond permissible, if such restraints are later dissolved—regardless of the good or bad faith of the complainant in seeking the restraint. *See, e.g.,* Aetna Casualty and Surety Co. v. Bell, 95 Nev. 822, 603 P.2d 692 (1979); Artistic Hairdressers, Inc. v. Levy, 87 Nev. 313, 486 P.2d 482 (1971); Glens Falls Insurance Co. v. First National Bank, 83 Nev. 196, 427 P.2d 1 (1967). Thus, we would dispute the trial court's initial determination that the injunction was not wrongfully granted.

Nonetheless, since an award for attorney's fees was made in the amount of the bond, the crucial issue confronting us is not whether recovery for damages against the bond is permissible, but whether such recovery may exceed the limits of the bond, as respondents would have us rule.

The rationale underlying respondents' view is that the application for a temporary restraining order is usually made *ex parte;* the amount of security for the defendant's protection often is arbitrarily set, and may be, at best, an estimate by the court based upon opinion or *ex parte* representations by the complainant or his counsel. This minority view holds that when the bond proves inadequate, the complainant is the logical party to respond to damages because he caused the injury by initiating the restraint. *See* Smith v. Coronado Foothills

---

disposition above, we need not determine if the alternative argument provided a sufficient basis for the trial court's decision.

[5]NRCP 65(c) provides, in part:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party *who is found to have been wrongfully enjoined or restrained*. (Emphasis added.)

Estates Homeowner's Association, 571 P.2d 668 (Ariz. 1977). *See also* Howard D. Johnson Co. v. Parkside Development Corp., 348 N.E.2d 656 (Ind.App. 1976); Johnson v. McMahan, 40 S.W.2d 920 (Tex.Civ.App. 1931).

The majority rule, however, limits recovery to the amount of the bond, absent a showing that the complainant obtained the temporary restraining order or preliminary injunction maliciously or in bad faith. *See, e.g.,* Egge v. Lane County, 556 P.2d 1372 (Or. 1976); Venegas v. United Farm Workers Union, 552 P.2d 210 (Wash.App. 1976); Weber v. Johnston Fuel Lines, Inc., 540 P.2d 535 (Wyo. 1975). A similar position is adopted by the federal courts. *See, e.g.,* Buddy Systems, Inc. v. Exer-Genie, Inc., 545 F.2d 1164 (9th Cir. 1976), *cert.* denied, 431 U.S. 903 (1977); United Motor Service v. Tropic-Aire, Inc., 57 F.2d 479 (8th Cir. 1932); J. Moore *Federal Practice,* § 65.10[1] (2d ed. 1980).

The minority view, espoused by respondents, undeniably has common sense appeal: it insures an adequate award of damages resulting from wrongful restraint assessed against the one who made the mistake, albeit in good faith. However, we find the majority view more compatible with public policy encouraging ready access to our courts. On balance, we find this public policy principle outweighs our concern for defendants facing inadequate bonds at the termination of a wrongful restraint. We must zealously protect the good faith pursuit of legal and equitable remedies from the deterrent certain to be posed by unknown liability for mistake. *See* United Construction Workers v. H. O. Canfield Co., 116 A.2d 914 (Conn.Super.Ct. 1955).

Under the rule we adopt today, the defendant is not without recourse in the event the bond proves to be inadequate during the restraint and continuing litigation; he may move for an increase in the bond. Respondents in the instant case failed to so protect themselves. There is substantial evidence that, at all relevant times, respondents were aware of the rapidly escalating construction and mortgage costs and had ample opportunity in which to move for an increase in the bond. Appellants would then have had the opportunity to assess the risks of pursuing their equitable claim. *See Venegas, supra,* at 211-213. We will not sanction an award of damages in excess of the bond where, as here, appellants obtained the restraint in good faith and the respondents failed to protect themselves from an inadequate bond with the means available to them.

The parties' remaining claims are either without merit or need not be reached. We affirm the trial court's determinations concerning both the appeal and the cross-appeal.

GUNDERSON, C. J., and SPRINGER and MOWBRAY, JJ., and ZENOFF, Sr. J.,[6] concur.