744 P.2d 121

**W.V. McATEE and Mary Gladys McAtee, husband and wife, and Kent S. McAtee, Plaintiffs-Appellants-Cross Respondents,**

**v.**

**FAULKNER LAND & LIVESTOCK, INC., an Idaho corporation, and Bruce T. Butler and Linda D. Butler, husband and wife, and L.H. Raizin, M.D., Chartered Profit Sharing Plan, Defendants-Respondents-Cross Appellants.**

**FAULKNER LAND & LIVESTOCK, INC., an Idaho corporation, and Bruce T. Butler and Linda D. Butler, husband and wife, Counterclaimants-Respondents-Cross Appellants,**

**v.**

**W.V. McATEE and Mary Gladys McAtee, husband and wife, and Kent S. McAtee, Counterdefendants-Appellants-Cross Respondents.**

No. 16491.

Court of Appeals of Idaho.

Sept. 28, 1987.

Rehearing Denied Sept. 28, 1987.

John S. Ritchie (argued) and John R. Coleman (Coleman, McIntyre & Ritchie), Twin Falls, for plaintiffs-appellants-cross respondents.

Gary D. Slette (argued) and Thomas G. Nelson (Nelson, Rosholt, Robertson, Tolman & Tucker), Twin Falls, for defendants-respondents-cross appellants.

SUBSTITUTE OPINION

The Court's prior opinion, dated August 3, 1987, is hereby withdrawn.

BURNETT, Judge.

This appeal comes to us from a judgment confirming the ownership of a decreed water right in an Idaho stream. The district court rejected a claim that the decreed right had been abandoned or forfeited. On appeal we are asked to decide (1) whether the district judge's decision was contrary to the evidence; (2) whether the judge abused his discretion in limiting the scope of rebuttal testimony and in failing to consult with another judge who had viewed the premises; and (3) whether the court erred in awarding compensation for damages, costs and attorney fees incurred as the result of a temporary restraining order. On cross-appeal, the owners of the decreed right contend that the compensatory award was inadequate. For reasons explained below, we affirm the district court's judgment on all points.

The background facts, somewhat simplified for the sake of discussion, are as follows. The parties own adjoining rural acreages along Croy Creek, and a tributary colorfully called Red Elk Creek or Red Elephant Creek, in Blaine County. The upstream land belongs to the decreed right owners: Faulkner Land & Livestock, Inc., Bruce and Linda Butler, and an entity known as the Raizin corporate profit-sharing plan. Their ownership is based upon a decree entered in 1909, granting their predecessor in interest an allocation of 200 inches of Croy Creek water with a priority date of June 1, 1880. *S.C. Frost, et al. v. Alturas Water Company, et al.,* October 6, 1909, District Court of Lincoln County. The downstream land belongs to the parties challenging the decreed right: Vince, Mary and Kent McAtee. The McAtees' predecessor received 350 inches of water with a priority date of June 1, 1883.

The McAtees purchased their property in 1964 with the intent of growing crops. At that time, none of their land had been irrigated with water from Croy Creek. The McAtees undertook extensive efforts during the next twenty years to irrigate increasing portions of the property with sprinkler and ditch systems. Upstream, since 1959, the land belonging to the decreed right owners had been used to pasture roving bands of sheep as well as some cattle and horses. Natural vegetation on the property was flood irrigated by diversions constructed across Croy Creek at various intervals.

Apparently, the parties had no disagreement over the use of Croy Creek water until the spring of 1985, when the McAtees learned that some of the decreed right owners were offering to sell subdivided lots along with appurtenant water. The McAtees sent a letter to the owners, asserting that the decreed right to 200 inches of 1880 water had been abandoned or forfeited. One of the owners then built an earth and gravel dam at a point upstream from previous diversions. The new structure altered the flow of water reaching the McAtees' downstream property. The McAtees promptly sued. Their complaint was broadly worded, alleging not only that the decreed right to 200 inches of 1880 water had been abandoned or forfeited, but also that the new dam was interfering with the McAtees' entitlement to 350 inches of 1883 water. The McAtees sought, and the district court issued, a temporary restraining order preventing the decreed right owners from continuing to divert any water from Croy Creek or its tributary. Ultimately, the McAtees sought a permanent injunction as well as damages for crop losses allegedly caused by the altered water flow. The decreed right owners counterclaimed for losses allegedly produced by the restraining order.

The district court conditioned the restraining order upon the posting of a $1,500 bond. The order subsequently was extended and the bond was increased to $5,000. A hearing on the issuance of a preliminary injunction was consolidated

with a nonjury trial on the ultimate merits of the lawsuit. The trial focused upon the status of the decreed right to 200 inches of 1880 water; little was said about the McAtees' allegation that their right to 350 inches of 1883 water had been violated. After a careful examination of all the evidence, the district judge concluded that the McAtees had failed to prove the elements of abandonment or forfeiture. The judge confirmed the existing ownership of 200 inches of 1880 water and he dismissed all other claims in the McAtees' complaint. In addition he awarded compensation of $5,000—the amount of the bond—to the decreed right owners who had been adversely affected by the temporary restraining order. This appeal and cross-appeal followed.

I

Although the McAtees sought at trial to prove both common law abandonment and statutory forfeiture, they have not pursued the abandonment theory on appeal. However, they do maintain that the district judge erred in his decision on the forfeiture question.

■ Forfeiture of water rights is conceptually distinct from common law abandonment. Abandonment is predicated upon the elements of intent and conduct. It requires an intent to abandon and the actual surrender or relinquishment of water rights. *Sears v. Berryman*, 101 Idaho 843, 623 P.2d 455 (1981). Statutory forfeiture focuses instead upon time and conduct. Idaho Code § 42–222(2) provides that all rights to water are lost where the appropriator fails to make "beneficial use" of the water for a continuous five-year period regardless of intent. *See, e.g., Gilbert v. Smith*, 97 Idaho 735, 552 P.2d 1220 (1976).

The courts have said repeatedly that forfeitures are not favored. It follows that forfeitures must be demonstrated by "clear and convincing evidence." *Carrington v. Crandall*, 65 Idaho 525, 531, 147 P.2d 1009, 1011 (1944); A. HUTCHINS, THE IDAHO LAW OF WATER RIGHTS 70 (1956). The determination of whether an appropriator has forfeited his right involves a twofold

inquiry. The first question is how, and for how long, the water has been used. This is a question of fact. *See, e.g., Sears v. Berryman, supra.* Accordingly, our standard of review is limited. We will not set aside a trial court's findings of fact unless they are clearly erroneous. I.R.C.P. 52(a). Clear error will not be deemed to exist, even where the required quantum of proof at trial is clear and convincing evidence, if the court's findings are supported by substantial and competent, though conflicting, evidence. *E.g., Rhodes v. State, Department of Health and Welfare*, 107 Idaho 1120, 695 P.2d 1259 (1985); *Faw v. Greenwood*, 101 Idaho 387, 613 P.2d 1338 (1980). However, the second question—whether the use to which the water has been put constitutes a "beneficial use"—is a question of law. *See generally Rudge v. Simmons*, 39 Idaho 22, 226 P. 170 (1924); *Pyke v. Burnside*, 8 Idaho 487, 69 P. 477 (1902). On that question we exercise free review.

We first address the factual issue. The parties presented conflicting testimony as to whether the decreed right owners had diverted water from Croy Creek or its tributary for use on their properties within the last five years. The McAtees testified that they had observed no diversions prior to construction of the dam one week before litigation began. They presented testimony by an expert who had examined the properties. He stated that the irrigation ditches he saw could not have been used during the five years preceding his inspection because vegetation, including sagebrush, was growing in them.

■ In contrast, several witnesses for the decreed right owners testified that water had been diverted and used to increase the natural yield of the vegetation for livestock grazing. Members of the Faulkner family explained that they regularly had built small earthen diversions on Croy Creek with native materials and that these diversions had been functional until they were washed out or trampled by cattle. At least one of the Faulkner employees testified that he had built such diversions several years in succession. Furthermore, John Faulkner stated that the testimony of Mc-

Atees' expert was faulty because the area the expert had inspected was not, in fact, the site of the main diversion. The ditches the expert observed had not been used for irrigation in many years. Finally, the Butlers testified that they had placed a plastic diversion structure in the stream shortly after purchasing their property in 1984.

The district judge accepted the version of facts offered by the decreed right owners. Our detailed review of the record convinces us that these findings are supported by substantial, though conflicting, evidence. Therefore, we will not disturb them.

Given the facts found, the trial judge correctly applied the law. He determined that the decreed right owners had put the water to beneficial use by diverting it regularly to irrigate the grazing lands. Our Supreme Court has held that water is put to a beneficial use when it is diverted to irrigate wild pasture. *Rudge v. Simmons, supra; Pyke v. Burnside, supra.* Accordingly, we find no error in the trial judge's conclusion that the existing ownership of the decreed right to 200 inches of 1880 water should be confirmed.

## II

We next consider the rulings at trial leading to this conclusion. The McAtees contend that the judge erred in restricting certain rebuttal testimony. As noted, the McAtees testified at length during their case-in-chief, stating that they had not observed any diversions of water on the neighboring properties. They presented the expert witness who opined that the irrigation ditches he observed could not have been used during the previous five years. Witnesses for the decreed right owners responded with the testimony also summarized above. The McAtees then sought to rebut this testimony by recalling their expert and Vince McAtee. The expert essentially reiterated his testimony regarding vegetation growing in certain ditches. Mr. McAtee repeated that he never had seen any diversions on the Faulkner property. The decreed right owners objected to any further testimony along this line, arguing that it was simply cumulative and,

therefore, improper rebuttal. The objection was sustained.

■ The permissible scope of rebuttal rests in the sound discretion of the trial court. Absent abuse of such discretion, the trial court's ruling will be sustained on appeal. *Cargill v. Hancock*, 92 Idaho 460, 444 P.2d 421 (1968); *J.E.T. Development v. Dorsey Construction Co., Inc.*, 102 Idaho 863, 642 P.2d 954 (Ct.App.1982). Rule 403, I.R.E., authorizes the court to exclude a "needless presentation of cumulative evidence." In the present case, we agree with the district court that the McAtees' proffered evidence merely elaborated what they had already attempted to establish during their case-in-chief. Although the evidence was offered for the purpose of rebuttal, it was cumulative in content. We find no abuse of discretion in the judge's ruling.

The McAtees further argue that the trial judge, who took over the case when another judge became ill, abused his discretion when he refused to consult with the original judge concerning a view of the premises. The first judge, Hon. Douglas Kramer, observed the properties during the summer. The trial took place in January. The new judge, Hon. George Granata, Jr., also viewed the premises, but the ground was covered with snow at that time. Numerous ground and aerial photographs were presented by both sides at trial. None of these pictures had been taken during the winter. When the McAtees asked Judge Granata to consult with Judge Kramer about his summer view, the motion was denied. Judge Granata stated:

I'm going to deny the motion of plaintiffs in the matter to discuss the case with Judge Kramer.... I think that my conclusion is that legally without a stipulation of counsel that it would be improper for me to discuss a matter with ... another judge....

■ A motion to view a site is addressed to the sound discretion of the trial court. *Golden Condor, Inc. v. Bell*, 106 Idaho 280, 678 P.2d 72 (Ct.App.1984). Here, the trial judge apparently believed that he had no authority, even with appropriate proce-

dural safeguards, to confer with the prior judge who had seen the premises. This position may have been unduly narrow. Nevertheless, if the trial judge misperceived the scope of his authority—a point we need not decide today—we think such error was harmless. The McAtees have not made any showing or cogent argument as to how the trial judge's failure to consult with his predecessor caused any actual prejudice. Absent a showing of prejudice, error will be deemed harmless. *E.g., Viehweg v. Thompson,* 103 Idaho 265, 647 P.2d 311 (Ct.App.1982). We hold in this case that reversible error has not been established.

### III

The McAtees' final contention is that the trial court erred in awarding compensation for damages caused by the temporary restraining order. The court awarded $1,500 to the Butlers and $2,000 to the Faulkner corporation in accordance with I.R.C.P. 65(c).[1] The McAtees contend that these awards were not supported by the evidence because the damage amounts had not been proven with reasonable certainty.

It is well settled in Idaho that the standard of reasonable certainty requires proof sufficient to take the measure of damages out of the realm of speculation. *Nelson v. World Wide Lease, Inc.,* 110 Idaho 369, 716 P.2d 513 (Ct.App.1986). It does not demand proof with mathematical exactitude. *Id.* The injured party is competent to testify concerning his estimate of losses incurred as a result of inability to use his property. *Id.; Galindo v. Hibbard,* 106 Idaho 302, 678 P.2d 94 (Ct.App.1984). Here, John Faulkner and Bruce Butler were actively engaged in their respective operations. Both had been involved in the ranching business all their lives. We deem it clear that they were competent to testify regarding the amounts of damage caused by the restraining order.

Butler testified that as a result of the order, he lost the benefit of an agreement to graze ten horses on his property at $50.00 per head per month for three months, or $1,500. The trial judge accepted this figure. We fail to see how this method of calculation violated the reasonable certainty standard. John Faulkner testified that the reduced pasturage caused his corporation's cattle to lose approximately twenty pounds per head. He computed the aggregate loss at $2,000. We likewise conclude that this testimony satisfied the reasonable certainty standard.

### IV

Finally, we turn to the cross-appeal. Faulkner and the Butlers argue that the trial court should have awarded not only their damages but also the full amount of their legal costs, including attorney fees, occasioned by the temporary restraining order. As mentioned earlier, the bond under Rule 65(c) eventually was fixed at $5,000. Of this amount, we have seen that $1,500 was awarded for Faulkner's loss of a grazing agreement and $2,000 was awarded for the diminished value of the Butlers' cattle. The remaining $1,500 was applied to the costs and attorney fees. However, more than $9,000 in costs and fees had been claimed. Faulkner and the Butlers now urge us to hold that the amount of the bond for the temporary restraining order did not limit the aggregate recovery of damages, costs and fees.

In contrast, the McAtees, who obtained the restraining order, argue that attorney fees should not be recoverable at all in this case. Noting that the hearing on a preliminary injunction was merged with a trial on the merits, the McAtees contend that the legal services necessary to defend against the abandonment and forfeiture claims were identical to the services performed in obtaining relief from the pretrial restraint.

---

1. The rule states, in pertinent part:
   No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages including reasonable attorney's fees to be fixed by the court, as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the state or of any political subdivision, or of an officer or agency thereof.

Because Rule 65(c) refers only to damages, costs and fees occasioned by such restraint, and because the decreed right owners never identified any legal services attributable *solely* to dissolution of the restraining order, the McAtees would have us hold that none of the attorney fees incurred by the owners should be awarded under the rule. We turn first to the McAtees' argument.

### A

There is no fundamental entitlement to recover attorney fees expended to obtain relief from a restraining order. As explained in the following excerpt from an opinion by Justice Cardozo, the right to compensation for any loss produced by a restraining order is linked to the bond that secures the order:

> There was no liability at common law for damages resulting from an injunction erroneously granted unless the case was one of malicious prosecution. Sometimes the chancellor made his order conditional upon the plaintiff's undertaking to assume the damages. But without such a condition the defendant had no remedy against the honest and cautious suitor. Public policy was thought to demand that the free pursuit of remedies in the courts should not be obstructed by the menace of liability for innocent mistake.
>
> . . . .
>
> ... It is true that the court may increase the amount of an undertaking which is found to be inadequate. A plaintiff then has the opportunity, if he thinks the security excessive, to abandon his injunction. In any case, he counts the cost, and assumes a liability whose maximum is a determinate amount.

*City of Yonkers v. Federal Sugar Refining Co.*, 221 N.Y. 206, 116 N.E. 998, 998–99 (1917) (citations omitted).

Under early Idaho statutes providing for security bonds, attorney fees were recoverable only when incurred at separate proceedings to dissolve the temporary restraining order or preliminary injunction, as opposed to an eventual trial on the merits. *See* discussion in *Devine v. Cluff*, 110 Idaho 1, 713 P.2d 437 (Ct.App.1985). However, we held in *Devine* that Rule 65(c) now permits recovery of attorney fees incurred to gain relief from a restraining order even if the order is not challenged at a separate, pretrial proceeding. Because *Devine* involved several issues among multiple parties, we were careful to emphasize that the recoverable fees are limited to work undertaken to overturn the restraining order.

Here, as we have mentioned, there was no separate hearing on whether the restraining order should be dissolved or should ripen into a preliminary injunction. Judge Kramer, who set the $5,000 bond, commented from the bench that "it is going to be most difficult to determine what portion of fees are incurred with respect to the [temporary restraining order] as opposed to the merits...." After the trial, Judge Granata determined that the work performed by counsel for the decreed right owners in seeking dissolution of the restraining order had been essentially the same as that performed in defending the McAtees' action on the merits. Based upon that determination, Judge Granata analyzed the attorney fee issue, in light of our decision in *Devine*, as follows:

> This case is like *Devine* in that it was necessary to carefully prepare and prove disputed facts to dissolve the injunction [sic]. This case differs from *Devine* in that the work done to defeat the plaintiffs' temporary restraining order was also the work done to defeat the complaint and pursue the counterclaim. The plaintiffs' complaint seeking a permanent injunction, declaratory relief and damages, and the defendants' counterclaim seeking damages stemming from the issuance of the temporary restraining order, all depended upon the same issue: whether the defendants had abandoned or forfeited their water rights. The defendants had to resolve that issue in order to dissolve the injunction. Thus, all of the labors expended by counsel for the defendants were necessary to dissolve the injunction here in question.
>
> That services performed in procuring a dissolution of a temporary restraining order are also a value in, or contribute

to defeating, the main action, will not prevent a recovery for the services actually rendered in procuring the dissolution.

*Davidson Grocery Co. v. United States Fidelity & Guaranty Co.*, 52 Idaho 795, 21 P.2d 75, 77 (1933), cited in *Cox Foods [Cox's Food] Center, Inc. v. Retail Clerks Union Local No. 1653*, 93 Idaho 179, 182, 457 P.2d 418, 421 (1969). *See also* 42 Am.Jur.2d *Injunctions* Sec. 375 at 1193 Text Accompanying Note 14 (1969). The labors expended by defense counsel were "strictly necessary" to procure the dissolution of the injunction, and merely because the value of those labors is indistinguishable from the value of the labors expended in the trial of the case on its merits will not preclude recovery for services in connection with the dissolution. *Idaho Gold Dredging Corp. v. Boise Payette Lumber Co.*, 60 Idaho 127, 90 P.2d 688, 699, 164 A.L.R. 1069 (1939). The defendants are thus entitled to an award of attorney's fees without being burdened with the impossible task of distinguishing between those labors expended in dissolving the restraining order from the *same* labors expended in trying the case on its merits.

■ In general, we agree with this reasoning. We find it consistent with our holding in *Devine*. Where the work performed to obtain dissolution of a restraining order or preliminary injunction is the same as that performed to defend against a claim on its merits, there is no basis to segregate recoverable fees from nonrecoverable fees under Rule 65(c). Accordingly, we hold that the rule allows recovery of attorney fees without forcing the wrongfully restrained party somehow to distinguish among services that are truly indistinguishable.[2]

**B**

Although attorney fees expended on pretrial restraint issues are embraced by Rule 65(c), the rule does not mandate that every dollar of such fees will be recovered. Rather, the rule strikes a balance, articulated by Justice Cardozo, between protecting wrongfully restrained defendants and avoiding undue hardship for plaintiffs who present facially meritorious claims in good faith. The rule states that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, *in such sum as the court deems proper....*" (Emphasis added.) In light of this balance, we now consider the decreed right owners' argument that the compensatory award in this case was inadequate because it failed to cover all attorney fees.

The owners contend that two errors were committed below—one by each judge who participated in the case. The first mistake allegedly was made by Judge Kramer when he denied the owners' motion to raise the bond from an initial figure of $1,500 to $13,000, a sum urged by the owners as the likely total claim for damages, costs and attorney fees. Judge Kramer raised the bond to $5,000 instead.

■ This ruling is entitled to deferential review. Setting a bond amount which the court "deems proper" under Rule 65(c) is an exercise of discretion. We are not persuaded that Judge Kramer abused that discretion. We acknowledge that counsel for the decreed right owners supported his motion for an increased bond with an affidavit stating that his firm already had billed

---

2. We caution judges to scrutinize any contention that pretrial restraint issues are the same as the ultimate merits. Ordinarily they are not the same. Here, for example, the temporary restraining order was issued upon broad allegations that the decreed right owners had abandoned or forfeited their right to 200 inches of water *and* that they had interfered with the McAtees' separate entitlement to 350 inches. The latter allegation may well have been an important factor in Judge Kramer's decision to issue a restraining order; yet it received little attention or factual development during the trial. Although there clearly was some overlap of pretrial restraint issues and issues eventually tried, they may not have been entirely coextensive. However, this distinction among issues has not been argued on appeal. In any event, it is unlikely that the distinction would be sufficient to reduce the allowable claim for attorney fees and costs below the sum of $1,500 which Judge Granata awarded, in effect, under the bond.

roughly $5,000 in fees and would bill more by the end of trial. But it was far from certain that the trial work would fall entirely, or even largely, within Rule 65(c). *See* footnote 2, *supra.* Moreover, the fees already billed had not been reviewed for reasonableness under I.R.C.P. 54(e)(3); they could have been adjusted later. Finally, it was not known how much, if anything, the owners would recover on their damage claims. Accordingly, we think $5,000 was a figure within the judge's range of discretionary authority, based on the facts before him at that time.

The second alleged error is Judge Granata's decision limiting the ultimate recovery to the same figure of $5,000. This error, the owners argue, was particularly egregious in light of a statement made by Judge Kramer, when fixing the bond amount, that he did not believe a final recovery would be limited by the bond. The owners contend that they took this statement to be an assurance that the bond amount would not adversely affect them.

We understand the owners' sense of frustration over seemingly inconsistent rulings by different judges. But we think the owners protest too much. At the hearing on their motion to increase the $1,500 bond, the owners themselves asserted that the bond could limit any eventual recovery.

Their capable attorney invited Judge Kramer's attention to an Idaho case arguably illustrating such a limitation:

> I and members of my firm are concerned that the ... case of *Idaho Gold Dredging v. Boise Payette Lumber Company* [62 Idaho 683, 115 P.2d 401 (1941)] might limit the amount of recovery for attorney's fees to the actual amount of the bond. In [that] case, ... the Court ... made a statement that the recovery of a reasonable attorney fee, not exceeding the amount actually paid by the client and not exceeding the limit of the bond, may be had.

At the conclusion of counsel's argument, Judge Kramer remarked that numerous factors must be weighed in setting the amount of a bond. He then stated:

> I am going to increase the bond to $5,000 at this time. And I don't think that it is still the law that the attorney's fees might be limited to whatever the bond is set. If that is the law, we will try and change it.

The judge's language was hardly a blanket assurance that the owners could disregard any limitation imposed by the $5,000 figure. By fixing the amount "at this time," the judge left the door open to further adjustment of the bond before trial. The owners sought no further adjustment.[3]

---

**3.** The owners have argued on appeal that any request for further adjustment of the bond would have contravened the "law of the case." However, they cite no authority for the dubious proposition that a bond amount, once adjusted, becomes immutable and is transformed into a governing rule of law. We think the argument lacks merit.

The owners also contend that if a request for further adjustment had been made to Judge Granata, it would have constituted "judge shopping" and would have exposed the owners to sanctions under I.R.C.P. 11(a)(2). The rule provides in pertinent part as follows:

> In any action, if an application by any party to the judge of a court for the issuance of an order or writ is denied in whole or in part by such judge, neither the party nor his attorney shall make any subsequent application to any other judge except by appeal to a higher court.... Any writ or order obtained in violation of this section shall be immediately vacated by the judge issuing the same upon discovery of the prior application to another judge, and the party and his attorney shall be subject to such costs and sanctions as the court may determine in its discretion. *Nothing in this rule shall prevent a party or his attorney from renewing a motion or an application to the same judge, or a newly appointed judge, in an action after such motion or application was originally denied....* [Emphasis added.]

The rule condemns any effort to nullify a judge's order by bringing a second judge into the case and obtaining a contrary order from him. The rule is not offended where, as here, a judge is removed from the case and his successor is asked to reconsider an earlier order. Such a request could have been made regardless of the change in judges. Of course, a request for reconsideration, like any pleading, must be made in good faith. *See* I.R.C.P. 11(a)(1). But in this case—where the accruing pretrial costs and attorney fees presented a fluid fact pattern, where the first judge had settled on a bond amount appropriate "at this time," and where the first judge explicitly had acknowledged that his view regarding the effect of a bond might not be supported by existing law—we deem it

Moreover, the judge made it abundantly clear that recovery in excess of the bond might require a change in the law. The owners did not seek to clarify the law by moving for leave to appeal by permission.[4] Rather, the owners let the $5,000 bond go unchallenged until a final judgment on the merits had been entered.

In jurisdictions with rules or statutes similar to I.R.C.P. 65(c), most courts have held that there can be no recovery in excess of the bond absent a showing of malicious prosecution. *See, e.g., United Motors Service, Inc. v. Tropic-Aire, Inc.*, 57 F.2d 479 (8th Cir.1932); *United Construction Workers v. H.O. Canfield Company*, 19 Conn.Supp. 450, 116 A.2d 914 (Super.Ct. 1955); *Tracy v. Capozzi*, 98 Nev. 120, 642 P.2d 591 (1982); *City of Yonkers v. Federal Sugar Refining Co.*, supra; *Mountain States Telephone and Telegraph Company v. Atkin, Wright & Miles, Chartered*, 681 P.2d 1258 (Utah 1984); *Jensen v. Torr*, 44 Wash.App. 207, 721 P.2d 992 (1986); *Weber v. Johnston Fuel Liners, Inc.*, 540 P.2d 535 (Wyo.1975). Limited exceptions to this rule, not applicable here, have been recognized where a plaintiff is unjustly enriched by the pretrial restraint, *Mitchell v. Riegel Textile, Inc.*, 259 F.2d 954 (D.C.Cir. 1958), or where the plaintiff offers his financial responsibility in lieu of a bond. *Monroe Division, Litton Business Systems, Inc. v. De Bari*, 562 F.2d 30 (10th Cir.1977).

The decreed right owners in this case advocate a minority view, that when a bond proves inadequate, the plaintiff ought to pay the excess because it was his request for pretrial restraint which caused the defendant's loss. The primary authority for this view is *Johnson v. McMahan*, 40 S.W.2d 920 (Tex.Civ.App.1931), a case preceding modern rules of procedure. *John-son* has been cited, but its rationale has not been analyzed, in *Smith v. Coronado Foothills Estates Homeowner's Association*, 117 Ariz. 171, 571 P.2d 668 (1977) and *Howard D. Johnson Co. v. Parkside Development Corp.*, 169 Ind.App. 379, 348 N.E.2d 656 (1976).

■ The minority view seems attractive on its surface. It provides for compensation of the entire loss resulting from wrongful restraint and it places the burden of compensation on the litigant who made the "mistake," albeit in good faith, of seeking the pretrial restraint. However, we find the majority view more compatible with the balance suggested by Justice Cardozo and with a public policy of encouraging ready access to the courts. Moreover, the majority rule allows a more rational allocation of the risk associated with pretrial restraint. Risk is best allocated when it can be quantified. Requiring the defendant to move for any necessary adjustments in the bond ensures that the risk of pretrial restraint will be quantified with information supplied by the party in the best position to estimate the potential loss. When the risk is so quantified, the plaintiff can make an informed decision on whether to maintain, or to withdraw, his request for pretrial restraint of the defendant's activities.

Accordingly, we adopt the majority rule. Recovery of damages, costs and attorney fees occasioned by the temporary restraining order in this case is limited to the amount of the bond. In the peculiar circumstances of this case, such a result may seem harsh to the decreed right owners. But we are not persuaded that a principled basis exists to hold otherwise. Neither are we persuaded that a different result would seem less harsh to the McAtees. In any event, our decision is consistent with *Idaho*

---

clear that a request for reconsideration could have been made in good faith.

**4.** Rule 12, I.A.R., provides that a party may move for permission to file an appeal from an interlocutory order. The criteria for granting such a motion are (1) that the appeal presents "a controlling question of law as to which there is substantial grounds [sic] for difference of opinion" and (2) that addressing the question immediately "may materially advance the orderly resolution of the litigation...." In this case, the decreed right owners tell us that they did not file a motion under I.A.R. 12 because they felt it would not have been granted. We simply observe that the issue framed by Judge Kramer's ruling, and his accompanying remarks, would have been a strong candidate for an appeal by permission.

*Gold Dredging v. Boise Payette Lumber Company, supra,* the case cited by the decreed right owners in their argument to Judge Kramer.

Accordingly, the judgment of the district court is affirmed. Costs to respondents (decreed right owners). No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.